# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 04-1138


**TERRY SIGLER, SR.**

**VERSUS**

**DRESSER RAND**


************

APPEAL FROM THE
OFFICE OF WORKERS' COMPENSATION,
DISTRICT 2, NO. 02-08090,
JAMES BRADDOCK, WORKERS' COMPENSATION JUDGE

************

**JIMMIE C. PETERS**
**JUDGE**

************

Court composed of Oswald A. Decuir, Jimmie C. Peters, and Glenn B. Gremillion, Judges.

**AFFIRMED IN PART; REVERSED IN PART; RENDERED IN PART; AND REMANDED IN PART.**


Decuir, J., dissents and assigns written reasons.

**Maria A. Losavio**
**Losavio Law Office, LLC**
**Post Office Box 12420**
**Alexandria, LA  71315-2420**
**(318) 767-9033**
**COUNSEL FOR PLAINTIFF/APPELLANT:**
     Terry Sigler, Sr.

**John J. Rabalais**
**Janice B. Unland**
**Robert T. Lorio**
**David S. Pittman**
**Rabalais, Unland & Lorio**
**5100 Village Walk, Suite 300**
**Covington, LA  70433**

**(985) 893-9900**
**COUNSEL FOR DEFENDANT/APPELLEE:**
      **Dresser Rand**

PETERS, J.

In this workers' compensation case, both the employee, Terry Sigler, Sr., and his employer, Dresser Rand, seek review of a judgment on the issues of penalties and attorney fees. Sigler has appealed, and Dresser Rand has answered the appeal. For the following reasons, we affirm in part, reverse in part, render in part, and remand in part.

## DISCUSSION OF THE RECORD

Dresser Rand employed Terry Sigler, Sr., in a temporary capacity as a supervisor to work at the Coastal Chemical Plant in Cheyenne, Wyoming. The Coastal Chemical Plant manufactures chemicals, including ammonia nitrate, and Sigler worked for Dresser Rand at the Wyoming facility from May to July of 2002. During that time, Sigler was exposed to ammonia fumes and began experiencing what he thought was a common cold.

On July 13, 2002, after returning to Louisiana, Sigler sought treatment at the emergency room of Byrd Regional Hospital in Leesville, Louisiana. He complained to the medical providers at the emergency room of wheezing and congestion and reported that he had begun experiencing the problems after cutting the grass. The medical providers apparently prescribed medication for an asthmatic condition and released him. Sigler had never suffered from asthma before this episode.

Less than one month later, on August 2, 2002, Sigler again sought medical care for breathing problems at an emergency room. This time, he presented himself to Huey P. Long Hospital in Pineville, Louisiana. Additionally, unlike the Leesville episode, he related his symptoms to a possible chemical exposure. The medical providers at the emergency room again prescribed medication and released Sigler from their care.

Three days later, Sigler caused an accident report to be filed, in which he claimed that he sustained injury due to the inhalation of chemical fumes during his employment at the Coastal Chemical Plant. Just over a month after filing the accident report, Dresser Rand obtained a statement from Sigler in which he reported that exposure to ammonia at the Wyoming facility had affected his lungs to the extent that he experienced difficulty breathing, shortness of breath, and wheezing. Sigler also related that he had obtained treatment in connection with his symptoms.

Nevertheless, relying on the emergency room records from Byrd Regional Hospital to the effect that Sigler had developed the symptoms after cutting grass, Dresser Rand did not institute payment of either indemnity or medical benefits, concluding that the cause of his condition was not related to his employment with Dresser Rand. Accordingly, Sigler's attorney made a demand for benefits by letter dated October 25, 2002. When Dresser Rand did not institute payment of benefits in response to the letter, Sigler filed the instant claim with the Office of Workers' Compensation in District Two in Rapides Parish, Louisiana.

On October 31, 2002, Sigler saw Dr. Maan Younes, an Alexandria, Louisiana pulmonologist, who diagnosed him with severe dyspnea (difficulty breathing) and wheezing following chemical inhalation. The doctor prescribed medication and placed Sigler on no-work status. Sigler continued to treat thereafter with Dr. Younes, who eventually diagnosed him as having reactive airways dysfunction syndrome, or RADS.

The record establishes that Sigler also obtained services at Christus St. Frances Cabrini Hospital in Alexandria, Louisiana. It appears that he first presented himself to the hospital on November 20, 2002. He was admitted to the hospital on November

2

26, 2002. During this period, he was treated for problems associated with coughing, shortness of breath, and chest congestion and was discharged. Shortly thereafter, on December 16, 2002, it appears that Sigler obtained additional services at the hospital. Thereafter, on January 11, 2003, he was again admitted to the hospital, where he remained for eleven days. Sigler's diagnoses included chronic obstructive pulmonary disease exacerbation, acute bronchitis, and rib fracture.

In the meantime, despite the history of medical treatment and diagnoses available to it, Dresser Rand continued to dispute Sigler's claim and sought a second medical opinion. At Dresser Rand's request, Dr. W. Brooks Emory, a New Orleans, Louisiana pulmonologist, examined Sigler on December 12, 2002. On December 26, 2002, the doctor issued a report to the effect that Sigler's work at the Coastal Chemical Plant did not cause his complaints and that, if anything, Sigler's return to the lower altitude in Louisiana may have been beneficial to him.

Thereafter, Sigler and Dresser Rand filed a joint motion to have the WCJ appoint an independent medical examiner in the field of pulmonology to resolve the dispute between Dr. Younes and Dr. Emory. The WCJ appointed Dr. Judd Shellito, a New Orleans, Louisiana pulmonologist. Dr. Shellito examined Sigler in March of 2003 and issued a report on April 7, 2003, in which he opined that Sigler had asthma and that his occupational exposure to ammonia had caused his condition. Dr. Shellito also opined that Sigler's asthma might be considered a variant of RADS. The doctor concluded that Sigler should not receive further exposure to respiratory irritants and that Sigler was disabled to that extent. As a result of Dr. Shellito's report, Dresser Rand accepted the claim and instituted retroactive payment of weekly indemnity benefits on May 2, 2003, and retroactive payment of outstanding medical expenses

3

on May 5, 2003. However, Dresser Rand delayed paying certain outstanding medical expenses until as late as December of 2003.

Following the institution of payment of indemnity and medical benefits, Sigler pressed his claim against Dresser Rand for penalties and attorney fees. After a February 6, 2004 hearing on these issues, the WCJ took the case under advisement. On March 5, 2004, Dresser Rand filed a post-trial memorandum, in which it asserted for the first time in the proceedings that the WCJ lacked subject matter jurisdiction over the claim. It based this assertion on Sigler's testimony that Dresser Rand was located in Houston, Texas, and that his employment with Dresser Rand was at a facility in Wyoming. Sigler responded to this assertion on March 8, 2004, by filing a motion to reopen the case for the presentation of evidence regarding subject matter jurisdiction. In support of the motion, Sigler attached his affidavit containing assertions to establish jurisdiction. On April 15, 2004, the WCJ granted Sigler's motion to reopen the case for the submission of evidence in that regard. Sigler relied on his affidavit, and Dresser Rand chose not to present any evidence in opposition to Sigler's assertions.

On May 5, 2004, the WCJ rendered judgment decreeing that the Louisiana Office of Workers' Compensation in Rapides Parish did in fact have subject matter jurisdiction over the claim. Additionally, the WCJ ordered Dresser Rand to pay all medical expenses related to Sigler's work injury and awarded Sigler a $2,000.00 penalty for Dresser Rand's late payment of certain prescription expenses; a $2,000.00 penalty for Dresser Rand's late payment of medical expenses incurred for services rendered for hospitalizations at Christus St. Frances Cabrini Hospital, to include all medical providers related to those hospitalizations; a $2,000.00 penalty for Dresser

4

Rand's late payment of medical expenses regarding services provided by Dr. Younes; a $2,000.00 penalty for Dresser Rand's failure to provide proper vocational rehabilitation; and $15,000.00 in attorney fees. The WCJ failed to award penalties and attorney fees regarding indemnity benefits. Additionally, the WCJ denied Sigler's request for penalties and attorney fees regarding Dresser Rand's failure to reimburse Sigler the cost of photocopies of certain medical records and instead cast the cost of the photocopies as a cost of litigation.

Both Sigler and Dresser Rand filed a motion for new trial. Pursuant to the motions, the WCJ vacated the original judgment and, in a judgment signed on June 3, 2004, awarded Sigler a single $2,000.00 penalty for the late payment of all medical expenses and awarded attorney fees of only $7,500.00. The WCJ failed to mention any penalty award regarding vocational rehabilitation as he had done in the prior judgment, but, in all other respects, the WCJ reiterated its prior judgment in the judgment pursuant to the motions for new trial.[1]

Sigler appealed that judgment, contending that the WCJ erred in failing to award multiple penalties for each single violation regarding numerous untimely paid medical expenses, in failing to award a separate penalty for Dresser Rand's denial of Sigler's choice of pharmacy, in failing to award a separate penalty and attorney fee for Dresser Rand's failure to reimburse his out-of-pocket expenses for the photocopies of the medical records, in failing to award a separate penalty and attorney fee for Dresser Rand's failure to accept the compensability of the claim, in reducing the attorney fee award by fifty percent, and in vacating the original judgment. Dresser Rand answered the appeal, seeking dismissal of Sigler's claims on the basis

---

[1]We note that in his oral reasons for judgment, the WCJ expressly eliminated the penalty award regarding vocational rehabilitation.

5

that the WCJ erred in reopening the case for the introduction of additional evidence on the issue of subject matter jurisdiction, in finding that subject matter jurisdiction existed, in assessing Dresser Rand with penalties and attorney fees, and in awarding excessive attorney fees.

## OPINION

### *Subject Matter Jurisdiction*

Louisiana Code of Civil Procedure Article 2 provides in pertinent part that "[j]urisdiction over the subject matter is the legal power and authority of a court to hear and determine a particular class of actions or proceedings." Importantly, "jurisdiction of a court over the subject matter of an action or proceeding cannot be conferred by consent of the parties," and "[a] judgment rendered by a court which has no jurisdiction over the subject matter of the action or proceeding is void." La.Code Civ.P. art. 3. Thus, because the issue of subject matter jurisdiction addresses the court's authority to adjudicate the cause before it, the issue may be considered at any time, even by the court on its own motion, at any stage of an action. *Boudreaux v. State, Dep't of Transp. & Dev.*, 01-1329 (La. 2/26/02), 815 So.2d 7.

Because subject matter jurisdiction may be questioned at any stage of an action, Dresser Rand's post-trial raising of the issue was timely. However, by raising the issue *after* trial, Dresser Rand precluded Sigler's opportunity to present evidence on the issue *at* trial. In granting Sigler's motion to reopen the case, the WCJ explained:

> If this Court were to disallow the reopening of the case with regard to the issues [sic] of subject matter jurisdiction, and if there is evidence to substantiate that this Court does, in fact, have subject matter jurisdiction, it would serve a great dis-justice to Mr. Sigler because the result would be that there was no jurisdiction in this state, and the payor of benefits could stop paying him benefits if they had started paying him, and the claim would become potentially res judicata, and Mr. Sigler would no

6

longer have the right to assert claims under the Louisiana Workers' Compensation Law.

The WCJ has the power to control the proceedings at trial so that justice is done. La.Code Civ.P. art. 1631(A). "The decision to reopen the record for the production of additional evidence, after all parties have rested, is one within the sound discretion of the trial court and will not be disturbed on appeal unless it is an abuse of discretion." *Parkes v. Prien Pines Nursery*, 98-384, p. 4 (La.App. 3 Cir. 11/4/98), 722 So.2d 36, 40-41, *writ denied*, 98-2993 (La. 1/29/99), 736 So.2d 837.

In asserting that the WCJ erred in reopening the record, Dresser Rand cites our decision in *Romero v. Northrop-Grumman*, 01-24 (La.App. 3 Cir. 5/30/01), 787 So.2d 1149, *writ denied*, 01-1937 (La. 10/26/01), 799 So.2d 1144, apparently for the proposition that a litigant should be given no further opportunity for the presentation of evidence where the litigant has been given a full opportunity to present such evidence, has presented no acceptable reason for its failure to present evidence, and has given no compelling reason for the record to remain open.

In *Romero*, the employer raised *in its supplemental answer* the issue of a credit for the short-term disability and health insurance benefits it had provided to its employee, yet the employer failed to provide the proof necessary at the hearing to allow the WCJ to award the credit. Further, the employer did not request that the record remain open for the submission of evidence in that regard. Nevertheless, the WCJ held that the employer was entitled to a credit for the short-term disability and health insurance benefits it had provided to its employee if it could provide evidence of the proportion it had funded, and the WCJ left the record open to allow submission of such evidence. On appeal, the employee contended that the WCJ erred in finding

7

that the employer was entitled to a credit where there was no evidence on the issue. In finding that the WCJ erred in this regard, we stated in part:

> We recognize the WCJ's discretion in allowing the record to remain open for further evidence. However, in a case such as this, where the defendant has been given full opportunity to present evidence at a hearing, has presented no acceptable reason for its failure to present evidence, has given no compelling reason for the record to remain open, and has not specifically requested that the record remain open, no further opportunity for the presentation of evidence should be given.

*Id.* at 1154-55 (citations omitted).

Importantly, in *Romero*, the employer, who had raised the issue prior to trial, also bore the burden of proof on the issue yet failed to carry that burden of proof. In the instant case, Dresser Rand, who raised the issue after trial, did not bear the burden of proof on the issue. In other words, Sigler was blind-sided by a challenge to the WCJ's jurisdiction at a time when he could not respond without the reopening of the record and was not merely absent-minded in providing evidence on an issue he had either placed before the WCJ or knew was in dispute. Further, in *Romero*, the employer did not request that the record remain open, whereas in the instant case Sigler filed a motion to have the record reopened after being apprised of Dresser Rand's challenge to the WCJ's subject matter jurisdiction. Thus, *Romero* is readily distinguishable from the instant case.

This is a situation in which there was no evidence of subject matter jurisdiction because there was no pretrial or trial dispute over the issue. In fact, as pointed out by the WCJ, had Sigler presented evidence as to subject matter jurisdiction at the trial on the merits, Dresser Rand could not have countered that evidence because it had no one present at trial to do so. Had this issue been raised on appeal, this court would have had the authority to remand for further evidence on the issue, and there is no

difference in the WCJ doing so pursuant to a post-trial motion. Accordingly, we find no abuse of discretion in the WCJ's decision to reopen the record in the matter before us. To rule otherwise would be to preclude evidence on the issue thereby prohibiting an otherwise viable claim from consideration. Fair play dictates that Sigler should be allowed to address the issue after trial through the reopening of the record.

Dresser Rand further contends that, even assuming that the WCJ did not err in reopening the record, the evidence Sigler presented on the issue of subject matter jurisdiction was insufficient to carry his burden on that issue. We disagree. Louisiana Revised Statutes 23:1035.1 provides in part:

> (1) If an employee, while working outside the territorial limits of this state, suffers an injury on account of which he, or in the event of his death, his dependents, would have been entitled to the benefits provided by this Chapter had such injury occurred within this state, such employee, or in the event of his death resulting from such injury, his dependents, shall be entitled to the benefits provided by this Chapter, provided that at the time of such injury
> (a) his employment is principally localized in this state, or
> (b) he is working under a contract of hire made in this state.

In his affidavit provided to establish subject matter jurisdiction, Sigler asserted that he was contacted by a supervisor of Dresser Rand via telephone at his home in Louisiana, that he was hired over the telephone in Louisiana in May of 2002, that Dresser Rand mailed him a contract at his home in Louisiana, and that he signed the contract at his home in Louisiana and mailed it back to Dresser Rand's Houston office. Dresser Rand presented no evidence to contradict these assertions. Accordingly, we find that the WCJ did not err in finding subject matter jurisdiction on the basis that Sigler was working under a contract of hire made in Louisiana.

***Motions for New Trial***

9

Sigler asserts on appeal that the WCJ erred in vacating the original judgment without expressly ruling on the motions for new trial. We find no merit in this assignment of error.

Louisiana Code of Civil Procedure Article 1971 provides that "[a] new trial may be granted, upon contradictory motion of any party or by the court on its own motion, to all or any of the parties and on all or part of the issues, or for reargument only." At a May 24, 2004 hearing, the WCJ expressly stated that the matter before him was "on motions for a new trial filed on behalf of Mr. Sigler and Dresser Rand." Following the presentation of arguments by the litigants, the WCJ immediately gave oral reasons for judgment, which rulings were subsequently incorporated into a judgment on June 3, 2004. The actual judgment itself states that the "cause came to be heard on the 24th day of May, 2004 on Motion for New Trial filed on behalf of the Employee and Employer." Thus, it is clear that the WCJ expressly ruled on the motions for new trial.

### *Penalties*

Sigler contends on appeal that the WCJ erred in failing to award penalties for Dresser Rand's failure to timely institute payment of indemnity benefits and that the WCJ erred in failing to award nine separate penalties for Dresser Rand's failure to timely pay outstanding medical expenses. In its answer to the appeal, Dresser Rand contends that the WCJ erred in awarding any penalties.

Louisiana Revised Statutes 23:1201(F)(2) provides for the payment of penalties and attorney fees for the failure to provide payment of benefits unless the claim is reasonably controverted or the failure to pay results from conditions over which the employer had no control. The determination of whether an employer should be cast

10

with penalties and attorney fees is a question of fact which should not be reversed absent manifest error. *Romero*, 787 So.2d 1149.

The WCJ found that Dresser Rand "reasonably controverted the claim up until . . . the time Dr. Shellito issued his report." The emergency room records of Byrd Regional Hospital suggested that Sigler developed his symptoms after cutting grass and were in conflict with Dr. Younes' causation opinion based on his October 31, 2002 examination. As early as November of 2002, Dresser Rand's third-party administrator began attempts to obtain a second medical opinion. That second medical opinion consult with Dr. Emory occurred on December 12, 2002, or about a month and a half after Dr. Younes issued his report. Dr. Emory's opinion provided a basis for Dresser Rand to deny the claim until Dr. Shellito issued his report making the connection. After receiving Dr. Shellito's opinion, Dresser Rand immediately began paying benefits.

While we might have weighed the evidence differently and drawn a different inference of fact, we do not find that the WCJ was clearly wrong in finding that Dresser Rand reasonably controverted Sigler's claim until the time Dr. Shellito issued his report. Because Dresser Rand immediately began paying indemnity benefits as well as certain outstanding medical expenses after Dr. Shellito issued his report, the WCJ was not clearly wrong in failing to award penalties and attorney fees regarding those benefits.

However, while Dresser Rand immediately paid several outstanding medical bills after Dr. Shellito issued his report, it delayed paying a number of others. In fact some were not paid for over eight months after Dresser Rand began paying benefits. The evidence substantiates no reasonable basis for Dresser Rand's delay in this

11

regard, particularly since it admitted that it accepted the compensability of the claim following Dr. Shellito's report. Thus, we find no manifest error in the WCJ's decision to assess a penalty for Dresser Rand's delay in paying the remainder of the outstanding medical expenses.

While Sigler obviously agrees with the WCJ's decision that Dresser Rand's delay in paying the outstanding medical bills had no reasonable basis, he argues on appeal that the WCJ should have awarded nine penalties rather than a single penalty. As previously stated, initially, the WCJ awarded multiple penalties totaling $6,000.00 for Dresser Rand's failure to immediately pay the remainder of the outstanding medical expenses. However, when presented with Dresser Rand's motion for new trial, the WCJ reduced the award of multiple penalties to a single penalty award of $2,000.00, apparently on the basis that he viewed Dresser Rand's untimely payments as a single violation.

In *Fontenot v. Reddell Vidrine Water District*, 02-439 (La. 1/14/03), 836 So.2d 14, the supreme court recognized that multiple penalties may be awarded for multiple violations of compensation and medical benefits claims.[2] Further, the supreme court expressed confidence that "the OWC and the appellate courts are fully able to ferret out those penalties for which an award should be made." *Id.* at 26.

Sigler cites our decision in *White v. Shop Rite*, 01-1532 (La.App. 3 Cir. 4/3/02), 813 So.2d 1144, *writ denied*, 02-1266 (La. 6/27/03), 847 So.2d 1273, in which a

---

[2]Subsequent to the pronouncements in *Fontenot*, the legislature amended La.R.S. 23:1201(F) by 2003 La. Acts No. 1204, § 1, effective August 15, 2003, to expressly provide for multiple penalties. However, the legislature additionally added a cap: "The maximum amount of penalties which may be imposed at a hearing on the merits regardless of the number of penalties which might be imposed under this Section is eight thousand dollars." We need not address the cap in this opinion because the penalties awarded do not exceed the cap. However, we note that "the provisions of the statute in effect at the time of the withholding of benefits control the award of penalties and attorney fees." *Smith v. Roy O. Martin Lumber Co.*, 03-1441, p. 13 (La.App. 3 Cir. 4/14/04), 871 So.2d 661, 670, *writ denied*, 04-1311 (La. 9/24/04), 882 So.2d 1144.

panel of this court amended a judgment to award multiple penalties where medical expenses were either paid untimely or were still outstanding and overdue. The decision in *White* is distinguishable from the matter before us in that the medical expenses for which Sigler seeks individual penalties were all incurred during a time in which the claim was reasonably controverted. While Dresser Rand clearly violated its obligation under La.R.S. 23:1201 by failing to immediately pay all outstanding medical expenses after the claim was no longer reasonably controverted, we find no error in the WCJ's decision to "ferret out" the penalties by concluding that Dresser Rand's violation was a single, ongoing one resulting in only one penalty award under the circumstances of this case. Thus, we affirm the single penalty award in the amount of $2,000.00 for Dresser Rand's failure to immediately catch up on the payment of all outstanding medical expenses.

Sigler additionally asserts that the WCJ erred in failing to assess a separate penalty for Dresser Rand's failure to reimburse him his $12.00 out-of-pocket expense for payment for photocopies of his medical records, which he obtained at Dresser Rand's request. The WCJ cast the $12.00 as a cost of litigation, and we find no error in that regard.

The more difficult of the penalty issues involves Dresser Rand's unilateral action, fifteen days before trial, in switching Sigler's prescriptions from his choice of pharmacy to a mail-order prescription service. Sigler contends that the WCJ erred in failing to assess a $2,000.00 penalty for Dresser Rand's action in this regard. For the reasons that follow, we do not find that Dresser Rand violated its obligation to Sigler simply because it chose to use a certain pharmaceutical service, but we do find that

13

Dresser Rand violated its obligation to Sigler because the pharmaceutical service it chose to use failed to supply certain medications timely.

Specifically, Sigler testified that between the time that Dresser Rand recognized the compensable nature of his claim and January 23, 2004, he obtained his prescription medication through Professional Pharmacy. The practice during that time was for Professional Pharmacy to call the office of Dresser Rand's third-party administrator and obtain authorization for the medication purchase. Sigler testified that on January 23, 2004, the third-party administrator refused to authorize the medication purchase and advised Sigler that, from that day forward, all medication purchases would be made through a mail-order prescription service in Florida. Trial on the merits occurred on February 6, 2004, or fifteen days after this unilateral action on the part of the third-party administrator.

The employer's duty to furnish prescription medication is addressed in La.R.S. 23:1203(A): "[T]he employer shall furnish all necessary drugs . . . and shall utilize such state, federal, public, or private facilities as will provide the injured employee with such necessary services. Medical care, services, and treatment may be provided by out-of-state providers . . . when such care, services, and treatment are not reasonably available within the state or when it can be provided for comparable costs." Dresser Rand's third-party administrator switched to the mail-order prescription service because it provided the medication at a cheaper price.

Sigler takes issue with Dresser Rand's reason for its action and asserts that in any event Dresser Rand was not entitled to chose the pharmaceutical provider for his medications, citing *Louisiana Clinic v. Patin's Tire Service*, 98-1973 (La.App. 3 Cir. 5/5/99), 731 So.2d 525. *Patin's* involved the administration of an MRI by a certain

14

healthcare provider, Louisiana Clinic. The employer and workers' compensation insurer in that case authorized the MRI but refused to authorize Louisiana Clinic to administer the diagnostic test. We explained: "We have found no authority that allows the employer or insurer to dictate the place and physician to perform diagnostic testing ordered by a treating physician." *Id.* at 528. Because the administration of medical diagnostic testing, the type of equipment used, and the interpretation of the results obtained from the testing involve individual skill levels and perhaps comfort levels for patients, we find that *Patin's* does not apply to the circumstances of this case. Unlike in the *Patin's* case, the medication Sigler obtained was the same regardless of which pharmaceutical company provided it.

Thus, we do not find that Dresser Rand violated its obligation to Sigler simply because it chose to have his prescriptions filled by a different pharmaceutical company. However, the problem in the matter now before us is the fact that the mail-order service selected was unable to provide Sigler his prescriptions *timely*. Sigler testified he had to have his medication refilled timely because of the risk of adverse side effects. For instance, he testified that he was taking Prednisone and using certain inhalers, without which he could not breathe. Nevertheless, the mail-order prescription service was unable to fill the Prednisone prescription due to "some kind of misunderstanding," and the service was unable to ship Sigler's pain medication through the mail. As a result, Sigler had to go to the hospital on two occasions.

Implicit within the requirement of La.R.S. 23:1203(A) that the employer "furnish all necessary drugs" is that those necessary drugs be provided timely. "[T]he benevolent goals of the workers' compensation law [are] to ensure prompt medical attention to injured workers." *Authement v. Shappert Eng'g*, 02-1631, p. 7 (La.

15

2/25/03), 840 So.2d 1181, 1186. Dresser Rand effectively denied Sigler the drugs needed for his compensable injury by denying the timely availability of those prescription drugs. In doing so, Dresser Rand violated its duty under La.R.S. 23:1203(A).

Louisiana Revised Statutes 23:1201(E) provides for penalties for the failure to provide medical benefits "within sixty days after the employer or insurer receives written notice thereof." Sigler's attorney made specific demand, by letter dated January 23, 2004, on Dresser Rand for continued use of the services of Professional Pharmacy. However, this demand letter was issued only fifteen days before trial. Thus, technically, it would appear that Dresser Rand had an additional forty-five days to have the prescriptions filled before incurring penalties under La.R.S. 23:1201.

Nevertheless, by letter dated October 25, 2002, Sigler's attorney made a general demand for all medical benefits. We find that the prescriptions at issue related back to the 2002 demand letter such that the sixty-day period has run. We make this finding on the basis of the nature and continuing necessity of the prescription medications at issue as well as Dresser's Rand's knowledge of and acceptance of the compensability of such medications. Dresser Rand had knowledge of Sigler's need for the medications at issue before it even accepted compensability of the claim, and it paid the Professional Pharmacy bills after it accepted compensability. We do not find that La.R.S. 23:1201 requires a demand letter and allows a sixty-day wait for each refill of a prescription already accepted as compensable by the employer. To hold otherwise would be to undercut the benevolent purposes of the Workers' Compensation Act.

16

We note that Dresser Rand's third-party administrator's adjuster testified that Sigler "always has the right to choose if he wants to have it [purchased through the mail-order pharmacy] or to have it go through his local pharmacy." However, such a promise rings hollow in light of the acknowledgment by the same adjuster that her office rejected Sigler's January 23, 2004 request to obtain his medications.

Accordingly, because Dresser Rand failed to timely provide refills of Sigler's prescription medications and failed to reasonably controvert Sigler's claim for such, we hold that he is entitled to a penalty in that regard. However, because Dresser Rand's violation occurred fifteen days before trial, we do not have evidence before us as to the length of its delay beyond the date of trial. Thus, we remand the matter for the taking of evidence as to the length of the delay and for the entry of a judgment as to the corresponding amount of the penalty due.

### *Attorney Fees*

Sigler also contests the WCJ's reduction of the attorney fee award to $7,500.00 from $15,000.00. Dresser contends that the WCJ erred in awarding any attorney fees and that in any event the amount awarded is excessive. For the reasons set forth in the penalties section of this opinion, we find no manifest error in the WCJ's decision to award attorney fees. Further, we find no abuse of discretion in the amount of the attorney fees awarded.

### DISPOSITION

For the foregoing reasons, we reverse the denial of penalties regarding the failure to timely provide the prescription medications through the mail-order service and award a penalty in that regard. We remand the matter for the taking of evidence as to the length of the delay and for the entry of a judgment as to the corresponding

17

amount of the penalty due.  Otherwise, we affirm the judgment below in all other respects.  We assess one-half of the costs of this appeal to Terry Sigler, Sr., and one-half to Dresser Rand.

**REVERSED IN PART; RENDERED IN PART; REMANDED IN PART; AFFIRMED IN PART.**

STATE OF LOUISIANA

COURT OF APPEAL, THIRD CIRCUIT

04-1138

TERRY SIGLER

VERSUS

DRESSERS RAND/COASTAL CHEMICAL

**DECUIR, J., dissenting.**

I respectfully dissent. The majority would have Dresser Rand try Sigler's case. They acknowledge that Dresser Rand raised the issue of subject matter jurisdiction in a timely manner and yet contend, "Dresser Rand precluded Sigler's opportunity to present evidence on the issue at trial." This is patently incorrect. Subject matter jurisdiction is a critical element of the claimant's case where the employer and injury are both out of state. Sigler had every opportunity at trial to establish this critical element of his case. He failed to do so, and Dresser Rand had no obligation to raise an issue that, given the state of the law regarding what constitutes a "contract for hire," would almost inevitably confer jurisdiction upon the court. While the majority contends Dresser Rand "blind-sided" Sigler, in reality it exercised the only defense left out of state defendants wishing to have their case heard in a more convenient forum.

The majority finds the decision to reopen the record to be within the trial court's discretion. While I do not disagree that the better rule is that a trial court has discretion, I believe the rule should be applied uniformly. What is becoming apparent throughout the jurisprudence is that the distinction of importance in reopening the record is whether the request is made by a defendant or a claimant. Finding myself unconvinced by the majority's attempt to distinguish *Romero*, I would find the trial

court erred in reopening the record and, therefore, would vacate the judgment for want of subject matter jurisdiction.  Accordingly, I respectfully dissent.