# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## WCA 14-304

MARC BORDELON

VERSUS

LAFAYETTE CONSOLIDATED GOVERNMENT

\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
OFFICE OF WORKERS' COMPENSATION - # 4
PARISH OF LAFAYETTE, NO. 11-04000
SHARON MORROW, WORKERS COMPENSATION JUDGE

\*\*\*\*\*\*\*\*\*\*

## BILLY HOWARD EZELL
## JUDGE

\*\*\*\*\*\*\*\*\*\*

Court composed of John D. Saunders, Billy Howard Ezell, and J. David Painter, Judges.

**AFFIRMED.**

**Saunders, J., dissents with written reasons.**

**Mark Alfred Ackal**
**Attorney at Law**
**P. O. Box 52045**
**Lafayette, LA 70505**
**(337) 237-5500**
**COUNSEL FOR DEFENDANT/APPELLEE:**
     **Lafayette Consolidated Government**

**John Vito Quaglino**
**Juge, Napolitano, etc.**
**3320 W. Esplanade Ave. North**
**Metairie, LA 70002**
**(504) 831-7270**
**COUNSEL FOR DEFENDANT/APPELLEE:**
     **Lafayette Consolidated Government**

**Harry Karl Burdette**
**The Glenn Armentor Law Corp.**
**300 Stewart St.**
**Lafayette, LA 70501**
**(337) 233-1471**
**COUNSEL FOR PLAINTIFF/APPELLANT:**
     **Marc Bordelon**

**EZELL, Judge.**

In this matter, Marc Bordelon appeals the decision of the workers' compensation judge below denying his disputed claim for workers' compensation benefits against the Lafayette Consolidated Government (LCG). For the following reasons, we hereby affirm the decision of the workers' compensation judge.

Dr. Bordelon was injured in the course and scope of his employment with LCG in September of 2003, suffering a disc protrusion that required surgery. His injury requires that he take prescription medication for muscle spasms and pain. He had been receiving his medications via mail from Injured Workers Pharmacy (IWP). LCG issued Dr. Bordelon a prescription medication card to receive his medications through CVS/Caremark and notified Dr. Bordelon and IWP in May of 2010 that any further bills for medications from IWP would not be authorized. In April of 2011, Dr. Bordelon ordered medications from IWP, despite the notice to both that bills for any such orders would not be paid by LCG. Dr. Bordelon filed a 1008 in June of 2011 seeking choice of pharmacy. In February of 2012, the workers' compensation judge granted summary judgment in favor of LCG, finding that it, not Dr. Bordelon, had choice of pharmacy. However, the workers' compensation judge told Dr. Bordelon at the time that, if the medications were not delivered in a reasonable timeframe, he could file a motion to change the pharmacy.

Claiming such delays occurred, Dr. Bordelon filed a motion for his choice of pharmacy on May 11, 2012. The workers' compensation judge ruled that LCG's choice of pharmacy was reasonable and that there were no deficiencies in the filling of Dr. Bordelon's prescriptions that would require a change. The workers' compensation judge also limited the payment of outstanding pharmacy bills to IWP

to $750 under La.R.S 23:1142 and denied Dr. Bordelon penalties and attorney fees. From that decision, Dr. Bordelon appeals.

Dr. Bordelon asserts three assignments of error on appeal. He claims that the workers' compensation judge erred in not granting his choice of pharmacy; in limiting the payment of outstanding pharmacy bills to $750 under La.R.S 23:1142; and in failing to award him penalties and attorney fees.

In his first assignment of error, Dr. Bordelon claims that the workers' compensation judge erred in not granting him his choice of pharmacy. We disagree. In holding that LCG's plan was reasonable and contained no failings so great as to require a change, the workers' compensation judge relied on this court's opinion in *Sigler v. Rand*, 04-1138 (La. App. 3 Cir. 12/29/04), 896 So. 2d 189, *writ denied*, 05-0278 (La. 4/1/05), 897 So. 2d 611. Dr. Bordelon claims that this ruling conflicted with a separate opinion of this court, *Louisiana Clinic v. Patin's Tire Service,* 98-1973 (La.App. 3 Cir. 5/5/99), 731 So.2d 525. However, that alleged conflict was directly addressed in *Sigler*, wherein, we stated:

> [the employee] takes issue with [employer's] reason for its action and asserts that in any event [the employer] was not entitled to cho[o]se the pharmaceutical provider for his medications, citing *Louisiana Clinic v. Patin's Tire Service,* 98-1973 (La.App. 3 Cir. 5/5/99), 731 So.2d 525. *Patin's* involved the administration of an MRI by a certain healthcare provider, Louisiana Clinic. The employer and workers' compensation insurer in that case authorized the MRI but refused to authorize Louisiana Clinic to administer the diagnostic test. We explained: "We have found no authority that allows the employer or insurer to dictate the place and physician to perform diagnostic testing ordered by a treating physician." *Id.* at 528. Because the administration of medical diagnostic testing, the type of equipment used, and the interpretation of the results obtained from the testing involve individual skill levels and perhaps comfort levels for patients, we find that *Patin's* does not apply to the circumstances of this case. Unlike in the *Patin's* case, the medication Sigler obtained was the same regardless of which pharmaceutical company provided it.

> Thus, we do not find that [the employer] violated its obligation to Sigler simply because it chose to have his prescriptions filled by a different pharmaceutical company.

*Sigler,* 896 So. 2d at 198.

Dr. Bordelon was informed by LCG and its pharmacy plan on how to properly fill his prescriptions in a timely manner, but his failure to follow the instructions he was provided was not the fault of LCG. Had Dr. Bordelon wanted his prescriptions filled quicker than the timeframe set by the mail order option he chose on his own accord, he had an ample number of local pharmacies in which to do so, or he could have simply sent in the prescriptions in the timeframe set out to him by CVS/Caremark. We can find no error in the workers' compensation judge's determination that, under *Sigler*, LCG was entitled to choose the pharmacy to be used by Dr. Bordelon.

In his next assignment of error, Dr. Bordelon argues that the workers' compensation judge erred in limiting the payment of the outstanding pharmacy bill to $750.00 through an allegedly erroneous application of La.R.S. 23:1142. Dr. Bordelon argues that the workers' compensation judge should have instead applied La.R.S. 23:1203 to award the lesser of the actual cost or the cost allowed under the reimbursement schedule for the prescribed medication at issue. Again, we disagree.

This issue was discussed by this court in *Rebel Distributors Corp., Inc. v. LUBA Workers' Comp.,* 2012-909 (La. App. 3 Cir. 4/2/14), 137 So. 3d 91, 95-97, wherein we stated (first through fourth alterations in original):

> Louisiana Revised Statutes Article 23:1142 is located in Subpart G, entitled "ATTORNEYS AND PHYSICIANS[,]" of Part I, "SCOPE AND OPERATION[,]" of the Workers' Compensation Act. At the time of the transaction at issue in this litigation, La.R.S. 23:1142 read, in pertinent part:
>
> . . . .

3

**B. Nonemergency care.** (1) Except as provided herein, each health care provider may not incur more than a total of seven hundred fifty dollars in nonemergency diagnostic testing or treatment without the mutual consent of the payor and the employee as provided by regulation. Except as provided herein, that portion of the fees for nonemergency services of each health care provider in excess of seven hundred fifty dollars shall not be an enforceable obligation against the employee or the employer or the employer's workers' compensation insurer unless the employee and the payor have agreed upon the diagnostic testing or treatment by the health care provider.

(2)(a) When the payor has agreed to the diagnostic testing or treatment, the health care provider shall not issue any demand for payment to the employee or his family until the payor denies liability for the diagnostic testing or treatment. Notwithstanding the foregoing, the health care provider may reasonably communicate with the employee or his attorney or representative for the purpose of pursuing its claim against the payor.

(b) A health care provider who knowingly and willfully violates this Paragraph may be ordered by the workers' compensation judge to pay penalties not to exceed two hundred fifty dollars per violation plus reasonable attorney fees. The penalty shall not exceed one thousand dollars for any demand for payment to an employee or his family which is issued after the health care provider has been penalized for a previous demand for payment to that employee or his family.

. . . .

Although La.R.S. 23:1142(B)(1) does not specifically include prescription medication in the "nonemergency diagnostic testing or treatment" which is subject to the $750.00 cap, we find no error in the WCJ's application of La.R.S. 23:1142 to [Plaintiffs'] claim against [the Defendant].

We choose to follow this prior ruling of this court. Furthermore, in this case, LCG provided Dr. Bordelon and his pharmacy, IWP, with notice in writing that payment to that IWP would cease to be made, effective June 1, 2010. This notice was followed up by another letter to IWP reiterating that LCG would not pay for

4

any charges to it for Dr. Bordelon after June 1, 2010. LCG received no bills from IWP until April and May of 2011, while Dr. Bordelon used the LCG service. When those bills from IWP were received, LCG immediately send notice that the bills would not be paid, as previously told to IWP, and tendered $750 for payment for Dr. Bordelon's prescriptions. Dr. Bordelon and IWP knowingly incurred more than $750 in expenses without LCG's consent, despite prior notification IWP would not be paid for services rendered to Dr. Bordelon. Dr. Bordelon argues that once LCG told IWP it would not approve the purchase of drugs from them, it was a denial of his claims and that authorization was no longer required. However, LCG never denied Dr. Bordelon his claim for prescription drugs and, in fact, set up a system by which he could receive them through 113 pharmacies locally or via the mail. Dr. Bordelon simply refused to use that system properly. We find no merit in this assignment of error.

Finally, Dr. Bordelon claims the workers' compensation judge erred in failing to assess penalties and attorney fees for the failure to timely pay for the prescription medication. "The determination of whether an employer should be cast with penalties and attorney fees in a workers' compensation case is essentially a question of fact and subject to the manifest error/clearly wrong standard of review." *Krogh v. Tri-State Refrigeration*, 11-697, p. 2 (La. App. 3 Cir. 11/2/11), 79 So. 3d 445, 447 (citing *Reed v. Abshire,* 05-744 (La.App. 3 Cir. 2/1/06), 921 So.2d 1224). As we have found no error in the workers' compensation judge's findings above, we cannot say that the workers' compensation judge erred in not awarding Dr. Bordelon penalties and attorney fees.

For the above reasons, we hereby affirm the decision of the workers' compensation judge. Costs of this appeal are hereby assessed against Dr. Marc Bordelon.

**AFFIRMED.**

**MARC BORDELON**

**VERSUS**

**LAFAYETTE CONSOLIDATED GOVERNMENT**

**Saunders, J., dissents with written reasons.**

SAUNDERS, J., dissenting

I respectfully dissent from the majority's decision to affirm the worker's compensation judge's determination that, under *Sigler*, LCG was entitled to choose the pharmacy to be used by Dr. Bordelon.

The trial court focused on the reasonableness of the employer's choice of pharmacy. While I do not disagree that the employer's choice was reasonable, I do not believe that "reasonableness" of the employer's choice of pharmacy is the focus of our inquiry. I believe the issue to be examined is whether an injured employee in Louisiana may choose his healthcare provider, including a pharmacist. I believe he may for the reasons set forth below.

Louisiana Revised Statutes 22:1964(15)(a) generally provides that issuance of any health benefits policy which "prohibits or limits a person who is an insured or beneficiary of the policy…from selecting a pharmacy or pharmacist of the person's choice…or in any manner interferes with that person's selection of a pharmacy of pharmacist" is an unfair or deceptive practice. While this statute does not directly apply to worker's compensation policies, reading this law in conjunction with the laws concerning worker's compensation, as a policy of insurance, it generally implies a legislative intent to preserve an insurance benefits

recipient's right to his choice of pharmacy and pharmacist. Further, this court has previously refused to restrict an injured employee's choice of healthcare providers, except where the choice is specifically given to the employer. *See Louisiana Clinic v. Patin's Tire Serv.*, 98-1973 (La.App. 3 Cir. 5/5/99), 731 So. 2d 525, 528 ("We have found no authority that allows the employer or insurer to dictate the place and physician to perform diagnostic testing ordered by a treating physician.")

Dovetailing with this analysis is the second circuit's interpretation of La.R.S. 23:1203 in *Brown v. KTBS, Inc.*, 42,847 (La.App. 2 Cir. 1/9/08), 974 So.2d 784, *amended on rehearing* (2/7/08), *writ denied*, 08-0353 (La. 2/15/08), 974 So.2d 1279. In this opinion, the court found that Louisiana was a "patient choice" state, explaining:

> La. R.S.23:1203 does not address the issue of which party has the right to choose a vendor for a reasonable and necessary medical device…[but] does set forth the obligation of an employer to a claimant, which is simply that of ***reimbursement*** of the lesser of the amount provided by the fee schedule or the actual amount paid for a recommended medical device.
>
> . . . .
>
> What is contemplated by the legislature is that a claimant will incur expenses for necessary drugs, supplies, care, services, or, as in this case, a medical device, then obtain reimbursement from his or her employer. Under the circumstances of this case, claimant clearly has the right to choose the providers of the necessary drugs, supplies, services, etc., and defendants are protected by: (1) the requirement that said drugs, supplies, services, etc., be necessary and (2) the cost limit established La.R.S. 23:1203(B).

*Id.* at 786 (emphasis in original).

Moreover, the Attorney General, in opinion No. 89-47, agreed that the employer could not compel an injured employee to use the pharmacy of its choice.

This court, in *Sigler v. Rand*, 04-1138, p.15 (La.App. 3 Cir. 12/29/04), 896 So.2d 189, 198, *writ denied*, 05-0278 (La. 4/1/05), 897 So.2d 611, concluded that an employee was entitled to choose the provider of diagnostic testing services "[b]ecause the administration of medical diagnostic testing, the type of equipment used, and the interpretation of the results obtained from the testing involve individual skill levels and perhaps comfort levels for patients." This court further opined that an employee was not entitled to choose his own pharmaceutical provider because "the medication [the employee] obtained was the same regardless of which pharmaceutical company provided it," *Id.* at 198, clearly suggesting that pharmaceutical providers provide merely ministerial services, rather than services that involve any level of skill. These conclusions were mere *dicta* in the case and, I submit, incorrect. For the reasons articulated below, I think that *Sigler* was wrongly decided, I think that this case was wrongly decided. While the majority finds itself bound by the holding of *Sigler*, I would overrule *Sigler*.

It is simply common knowledge that pharmacists provide more than merely ministerial services. Pharmacists are responsible for, among many other duties, accurately dispensing prescribed medications in the proper dosage to the proper patient, for advising the patient of any potential drug interactions, of any potential side effects, and of any recommendations concerning how and when to take medication, for communicating with prescribers when a prescription order is unclear or potentially harmful for the patient, for promoting general health by sharing advice concerning nonprescription remedies and supplements, such as vitamins, over-the-counter medications, and herbal remedies, and staying abreast of new medications and drug therapy protocol. Often, patients share confidential and personally sensitive information with their pharmacists. These tasks are much more than merely ministerial. They are an important part of a patient's treatment

and require advanced knowledge, a high-level of individual skill, and the comfort of the patient.

Further, pharmacists must go through a rigorous process to become licensed to administer pharmacy care in Louisiana. The applicant for a pharmacy license must:

1) be at least 21 years of age;

2) be of good moral character and temperate habits;

3) obtain a professional pharmacy degree from an approved college of pharmacy;

4) obtain a minimum of one year experience, under the supervision of a licensed pharmacist, in providing pharmacy care. La.R.S. 37:1202; and

5) complete any examinations required by the Board of Pharmacy.

Further, according to the *Application for Louisiana Pharmacist License*, promulgated by the Louisiana Board of Pharmacy, applicants must not only successfully complete a licensure examination, but must also complete a second examination and submit to a criminal background check. Finally, prior to their annual license renewal, pharmacists must complete a minimum of fifteen hours of continuing education. La.Admin Code tit. 46, §§505, 507. Surely the legislature would not have imposed such rigorous requirements on persons who provide no more than a ministerial duty.

It is my belief that Louisiana is overwhelmingly a "patient choice" state. In the absence of a clear expression from the legislature to the contrary, it should remain so. I would reverse worker's compensation judge's determination that LCG was entitled to choose the pharmacy to be used by Dr. Bordelon.

4