STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

06-268

DIANNA BROUSSARD

VERSUS

LAFAYETTE PARISH SCHOOL BOARD

**********

APPEAL FROM THE
OFFICE OF WORKERS' COMPENSATION - # 4
PARISH OF LAFAYETTE, NO. 00-01898
SHARON MORROW, WORKERS' COMPENSATION JUDGE

**********

ULYSSES GENE THIBODEAUX
CHIEF JUDGE

**********

Court composed of Ulysses Gene Thibodeaux, Chief Judge, Jimmie C. Peters, and J. David Painter, Judges.

PETERS, J., CONCURS IN THE RESULT.

AMENDED AND, AS AMENDED, AFFIRMED.

Michael Benny Miller
Miller & Miller
P. O. Box 1630
Crowley, LA 70527-1630
Telephone: (337) 785-9500
COUNSEL FOR:
        Plaintiff/Appellee - Dianna Broussard

Larry Lane Roy
Preis, Kraft & Roy
P. O. Drawer 94-C
Lafayette, LA 70509
Telephone: (337) 237-6062
COUNSEL FOR:
        Defendant/Appellant - Lafayette Parish School Board

THIBODEAUX, Chief Judge.

Defendant, Lafayette Parish School Board (LPSB), appeals the judgment of the Office of Workers' Compensation (OWC) which assessed penalties and attorney fees against LPSB for violating the OWC judgment which both increased the weekly compensation benefits owed to plaintiff, Dianna Broussard (Ms. Broussard), and made those increased payments "payable until further order of this court." Ms. Broussard, in answering the appeal, asks for judicial interest on the penalties and attorney fees and for additional attorney fees for defending this appeal. For the following reasons, the judgment of the OWC is affirmed, and judicial interest and additional attorney fees of $3,000.00 are awarded to Ms. Broussard.

I.

**ISSUE**

LPSB implores us to consider whether:

1.   the OWC committed manifest error when it assessed $3,000.00 in penalties, $2,500.00 in attorney fees, and court costs against LPSB for unilaterally terminating Ms. Broussard's weekly compensation benefits without first seeking an order of the OWC?;

2.   the OWC committed manifest error by assessing $5,040.00[1] in penalties against LPSB for paying a previous judgment untimely?; and,

3.   subsection La.R.S. 23:1201(F) of the Louisiana Workers' Compensation Act limits all penalties awarded in this case to a total of $8,000.00?

In her answer to this appeal, Ms. Broussard seeks interest on the awards of penalties and attorney fees and desires additional attorney fees for work done at the appellate level.

---

[1] The signed November 28, 2005 judgment of the OWC incorrectly listed the assessment of penalties for this violation as $5,000.40. All parties agree that the correct amount of penalties assessed, as stated in open court on the record, is $5,040.00.

## II.

## FACTS

Ms. Broussard was a full-time employee of LPSB in December of 1998. She worked as a food service technician at Carencro Middle School. She injured her back in a work-related accident and has not worked since April 8, 1999.

Ms. Broussard filed a disputed claim for compensation benefits on March 9, 2000. Ms. Broussard sought an increase in her weekly compensation benefits retroactive to the date she was first eligible to receive those benefits and penalties and attorney fees against LPSB. On June 11, 2003, the OWC rendered judgment and ordered LPSB to increase Ms. Broussard's weekly compensation benefits retroactive to the initial period of disability. The OWC also ordered LPSB to continue paying those temporary total disability (TTD) benefits "until further order of this court, together with interest as provided by law and all costs of this suit."

LPSB never increased Ms. Broussard's weekly compensation benefits in compliance with the June 11, 2003 judgment, nor did it pay the retroactive amount owed to her based on the newly calculated weekly compensation benefit determined by the OWC in the June 11, 2003 judgment until December 14, 2004.

On May 14, 2004, LPSB terminated Ms. Broussard's weekly compensation benefits without first filing a motion to do so with the OWC. LPSB reasoned that it was authorized to unilaterally terminate Ms. Broussard's TTD benefits by the language of La.R.S. 23:1221(1)(d), which states that TTD benefits shall cease when the employee's condition has resolved itself such that regular treatment by a physician is no longer required.

On September 14, 2004, Ms. Broussard filed a motion for penalties and attorney fees against LPSB for nonpayment of the June 11, 2003 OWC final

judgment, and for unilaterally terminating Ms. Broussard's TTD benefits without first obtaining an order of the OWC allowing it to do so. The OWC ordered LPSB to pay $5,040.00 in penalties for failing to pay the June 11, 2003 judgment timely and $3,000.00 in penalties for terminating Ms. Broussard's TTD benefits. LPSB was also ordered to pay $2,500.00 in attorney fees to Ms. Broussard and to pay all court costs.

III.

## LAW AND DISCUSSION

### Standard of Review

It is well established that the factual findings in a workers' compensation proceeding are subject to the manifest error/clearly wrong standard of review: "'[t]he determination of whether an employer should be cast with penalties and attorney fees is a question of fact which should not be reversed absent manifest error.' *Sigler v. Rand*, 04-1138, pp. 10-11 (La.App. 3 Cir. 12/29/04), 896 So.2d 189, 196, *writ denied*, 05-278 (La. 4/1/05), 897 So.2d 611 (citing *Romero v. Northrop-Grumman*, 01-24 (La.App. 3 Cir. 5/30/01), 787 So.2d 1149, *writ denied*, 01-1937 (La. 10/26/01), 799 So.2d 1144)." *Romero v. Garan's, Inc.*, 05-1297, pp. 3-4 (La.App. 3 Cir. 4/19/06), 929 So.2d 258, 261.

### Terminating TTD Benefits

Ms. Broussard's weekly benefits were unilaterally terminated by LPSB without first seeking a modification of the extant June 11, 2003 OWC order mandating the payment of weekly TTD benefits. LPSB argues that it was acting under the authority of a specific section of the Louisiana Workers' Compensation Act which allows for the cessation of benefits when the claimant is proven to be no longer

disabled and therefore able to return to some form of employment. LPSB specifically cites La.R.S. 23:1221(1)(d). That statute reads:

> (d) An award of benefits based on temporary total disability shall cease when the physical condition of the employee has resolved itself to the point that a reasonably reliable determination of the extent of disability of the employee may be made and the employee's physical condition has improved to the point that continued, regular treatment by a physician is not required.

LPSB ignores the fact that a previous order of the OWC was still in effect at the time of its unilateral termination of Ms. Broussard's TTD benefits. Regardless of LPSB's interpretation of this subsection of the statute, Louisiana courts have stated consistently that an employer may not unilaterally terminate benefits if those benefits were instituted by a previous order of the OWC. As an example, we have said, "[t]his court and our brethren of the Fourth Circuit have frowned upon an employer's unilateral termination of benefits despite a judgment of disability or an award of benefits by the Office of Worker's Compensation." *Fusilier v. Liberty Rice Mill, Inc.*, 569 So.2d 1050, 1055 (La.App. 3 Cir. 11/7/90).

It is difficult to fathom an act more arbitrary than disregarding a court order. "A judgment must be given full effect whether it is the result of a judicial determination or the consent of the parties." *Lewis v. Cornerstone Vill., Inc.*, 02-1162, p. 3 (La.App. 3 Cir. 5/21/03), 846 So.2d 970, 972, *writ denied*, 03-1790 (La. 10/10/03), 855 So.2d 347.[2] A workers' compensation judge has continuing

---

[2] Ironically, LPSB recognizes the sanctity of a court order. In a memorandum submitted to the OWC on June 13, 2003, LPSB argues that Ms. Broussard should be made to suffer the suspension of the TTD benefits due her because she had violated a previous order by the OWC requiring her to submit to a medical examination. LPSB specifically argued in that memorandum that "Ms. Broussard's non-compliance is [sic] with a court order cannot be tolerated. A suspension of benefits pending Ms. Broussard's compliance with the order compelling the examination seems the only method, outside of holding her in contempt, of assuring that this type of defiant behavior is not repeated." LPSB went on to request that the OWC also sanction Ms. Broussard's attorney for his "callous disregard for this court's authority." Why then would LPSB believe it could cease paying Ms. Broussard her court-ordered TTD benefits without following the process prescribed by La.R.S. 23:1310.8(B)?

jurisdiction over a dispute and may modify previously-issued orders pursuant to La.R.S. 23:1310.8 which, in pertinent part, states:

**§ 1310.8. Jurisdiction continuing; determining as to final settlement**

A. (1) The power and jurisdiction of the workers' compensation judge over each case shall be continuing and he may, upon application by a party and after a contradictory hearing, make such modifications or changes with respect to former findings or orders relating thereto if, in his opinion, it may be justified . . . .

. . . .

B. Upon the application of any party in interest, on the ground of a change in conditions, the workers' compensation judge may, after a contradictory hearing, review any award, and, on such review, may make an award ending, diminishing, or increasing the compensation previously awarded, subject to the maximum or minimum provided in the Workers' Compensation Act, and shall state his conclusions of fact and rulings of law, and the director shall immediately send to the parties a copy of the award.

If an employer believes, based on objective evidence and medical proof, that an employee no longer fits the definition of disabled and is, therefore, no longer eligible to receive benefits under the workers' compensation statute, that employer must petition the court and seek a judgment that the payment of benefits should be terminated. Rather than being an optional statute, as suggested by LPSB, the process for changing previous awards and orders by the OWC set out in La.R.S. 23:1310.8 is mandatory. "La.R.S. 23:1310.8(B) requires that for 'any award' to be modified, there must be an application and a contradictory hearing before the workers' compensation judge." *Lewis*, 846 So.2d at 972.

Legal anarchy would reign if employers were allowed to unilaterally decide the efficacy of a statute despite the existence of a contrary court order. "The nature of workers' compensation proceedings require[s] the WCJ to retain jurisdiction

5

in order to continuously assess the employee's condition. Furthermore, because the WCJ's adjudication imposes an ongoing obligation on the employer, it retains jurisdiction to address continuous violations." *Metoyer v. Roy O. Martin, Inc.*, 03-1540, p. 9 (La.App. 3 Cir. 12/1/04), 895 So.2d 552, 560, *writ denied*, 05-1027 (La. 6/3/05), 903 So.2d 467.

LPSB's capricious conduct captures the essence of La.R.S. 23:1201(I). That statute provides:

> I. Any employer or insurer who at any time discontinues payment of claims due and arising under this Chapter, when such discontinuance is found to be arbitrary, capricious, or without probable cause, shall be subject to the payment of a penalty not to exceed eight thousand dollars and a reasonable attorney fee for the prosecution and collection of such claims. The provisions as set forth in R.S. 23:1141 limiting the amount of attorney fees shall not apply to cases where the employer or insurer is found liable for attorney fees under this Section. The provisions as set forth in R.S. 22:658(C) shall be applicable to claims arising under this Chapter.

LPSB, in our view, was assessed a lenient $3,000.00 penalty by the OWC judge for its misconduct. Because LPSB's unilateral discontinuance of Ms. Broussard's TTD benefits violated the June 11, 2003 OWC order, La.R.S. 23:1310.8, La.R.S. 23:1201(I), and consistent jurisprudence, we affirm the $3,000.00 penalty assessed against LPSB. We also affirm the award of $2,500.00 for attorney fees, as La.R.S. 23:1201(I) specifically allows for an assessment of attorney fees against an employer found in violation of that subsection of the statute.

Additionally, we affirm the award of all court costs, including the cost of a deposition in the amount of $215.00. The attorney for LPSB was particularly belligerent and obstructive during the deposition in question. He repeatedly interrupted and harassed Ms. Broussard's attorney. Before the deposition commenced, he had instructed a witness under subpoena not to appear. This is a

6

violation of an order of the court. The witness whom the attorney for LPSB instructed not to appear was the person in charge of Ms. Broussard's benefits account at the time her benefits were terminated. He had firsthand, personal knowledge of the reasoning and process that led to the termination of Ms. Broussard's benefits. Ordering LPSB to pay for the cost of this deposition is a lenient penalty for instructing a witness under subpoena not to appear and engaging in obstructionist behavior.

## Failure to Timely Pay the June 11, 2003 Judgment

On June 11, 2003, LPSB was ordered by the OWC to increase weekly compensation benefits to Ms. Broussard and pay her a "sum of $210.20 per week based upon a compensation rate of $315.20 per week, retroactive to the initial period of disability, and subject to a credit for all sums paid, and payable until further order of this court, together with interest as provided by law and all costs of this suit." LPSB did not increase Ms. Broussard's weekly benefits as ordered by the OWC, nor did it pay her any retroactive benefits to which she was entitled. Indeed, until Ms. Broussard's lawyer filed the Motion for Penalties and Attorney Fees in September of 2004, LPSB did nothing to implement the June 11, 2003 judgment. LPSB finally paid the sums due to Ms. Broussard on December 14, 2004, one year, six months and three days after the initial judgment was signed by the WCJ. LPSB's inaction is the very definition of untimely payment of benefits due under a final, nonappealable judgment.

LPSB argues that the nonpayment of the judgment for a year and a half was merely an oversight that was corrected as soon as it was brought to the attention of LPSB. However, it was brought to LPSB's attention through a motion filed by Ms. Broussard's lawyer in September of 2004—a year and three months after the

7

judgment was signed. Even after that motion was filed, LPSB failed to pay the amounts owed to Ms. Broussard for another three months. LPSB's only defense is that this was merely an oversight on its part. However, we have cautioned that "an employer cannot urge its own poor clerical work to escape penalties and attorney fees for nonpayment." *Belaire v. Don Shetler Olds Buick Chevrolet*, 02-1152, p. 10 (La.App. 3 Cir. 6/4/03), 847 So.2d 723, 731 (quoting *Fisher v. Lincoln Timber Co.*, 31,430, p. 15 (La.App. 2 Cir. 1/24/99), 730 So.2d 973, 982). LPSB cannot use its own faulty record-keeping as an excuse to absolve itself from having to pay a penalty for its inactions. Penalties for late payment of entitled benefits are not optional; they are mandatory.

> Where the fact of late payment is uncontradicted and an employer fails to show that the late payment resulted from conditions over which the employer had no control or that the employee's right to have the bill paid by the employer is controverted, La.R.S. 23:1201 and 1201.2[3] mandate an award of penalties and attorney's fees.

*Daugherty v. Domino's Pizza*, 95-1394, p. 14 (La. 5/21/96), 674 So.2d 947, 956.

Louisiana Revised Statutes 23:1201(G) specifies how an employer shall be sanctioned for not paying a final, nonappealable judgment within thirty days after it becomes due. It states:

> G. If any award payable under the terms of a final, nonappealable judgment is not paid within thirty days after it becomes due, there shall be added to such award an amount equal to twenty-four percent thereof or one hundred dollars per day together with reasonable attorney fees, for each calendar day after thirty days it remains unpaid, whichever is greater, which shall be paid at the same time as, and in addition to, such award, unless such nonpayment results from conditions over which the employer had no control. No amount paid as a penalty under this Subsection shall be included in any formula utilized to establish premium rates for workers' compensation insurance. The total one hundred dollar per

---

[3]La.R.S. 23:1201.2 was repealed by 2003 La. Acts No. 1204, § 2.

calendar day penalty provided for in this Subsection shall not exceed three thousand dollars in the aggregate.

La.R.S. 23:1201(G).

There is no maximum penalty for a violation of La.R.S. 23:1201(G) when the WCJ chooses to penalize the employer by imposing a penalty equal to twenty-four percent of the amount due. The WCJ used this calculation to assess the $5,040.00 penalty against LPSB, and she was not manifestly erroneous for doing so. We, therefore, affirm the OWC judgment assessing $5,040.00 in penalties against LPSB for the untimely payment of the June 11, 2003 judgment increasing the weekly TTD benefits owed to Ms. Broussard, and doing so retroactive to the initial period of disability.

**Multiple Penalties in Excess of $8,000.00 Cap**

The Louisiana Supreme Court has specifically stated that La.R.S. 23:1201(F) allows for multiple penalties when there are multiple violations of compensation and medical benefits claims. *Fontenot v. Reddell Vidrine Water Dist.*, 02-439, 02-442, 02-478 (La. 1/14/03), 836 So.2d 14. In June of 2003, the Louisiana Legislature amended section 1201 of the Louisiana Workers' Compensation Act. The following words were added to subsection F: "The maximum amount of penalties which may be imposed at a hearing on the merits regardless of the number of penalties which might be imposed under this Section is eight thousand dollars." 2003 La. Acts No.1204, § 1. Subsections I and J were also added to the statute at that time. *Id*. LPSB argues that the legislature intended for the $8,000.00 cap set forth in subsection F to apply to any and all penalties for violating any and all subsections of section 1201. LPSB argues that because of the 2003 amendments to section 1201, the

OWC could not assess penalties in the aggregate of more than $8,000.00. We disagree.

"The legislature is presumed to have enacted each statute with deliberation and with full knowledge of all existing laws on the same subject." *State v. Brisco*, 04-3039, p. 11 (La. 7/6/06), 933 So.2d 754, 761. The legislature is therefore presumed to have known that subsection G was still in full force and effect when subsection F was amended by adding an $8,000.00 cap on all penalties for violations described in that subsection. Subsection G sets no limit on the amount of penalties that can be assessed when a WCJ chooses to penalize an employer in violation of that subsection by assessing a penalty equal to twenty-four percent of the unpaid award. "It is presumed that every word, sentence or provision in the statute was intended to serve some useful purpose, that some effect is to be given to each such provision, and that no unnecessary words or provisions were used." *ABL Mgmt., Inc. v. Bd. of Supervisors of S. Univ.*, 00-798, p. 6 (La. 11/28/00), 773 So.2d 131, 135.

Thus, we presume that the legislature left subsection G intact because it intended to punish employers additionally and differently when they did not pay an award under the terms of a final, nonappealable judgment within thirty days after it became due versus when they failed to provide pre-judgment payment of benefits and an employee filed a claim with the OWC. *See* La.R.S. 23:1201(G) and (F), respectively. Subsection F allows for the possibility of penalties assessed against an employer based on claims made by an employee of nonpayment of benefits due to that employee by the employer. Subsection G allows for penalties not based on claims, but based on the employer not paying an award of adjudicated claims based on a final judgment. As our supreme court has explained:

> It is well recognized that although the term "claim"
> appears throughout the Workers' Compensation Act, a

definition of that term does not exist in the Act. *Ross v. Highlands Ins. Co.*, 590 So.2d 1177, 1181 (La.1991). "Nonetheless, it is clear from the context of provisions using the term [in the Workers' Compensation Act] that the underlying claim for relief is what is meant, not the enforcement of a judgment. A claim is initiated by the filing of a petition with the OWC once an issue surfaces which the parties cannot themselves resolve." *Id*. at 1181; LA.REV.STAT. ANN. §§ 23:1310, 23:1310.3; *see also Rock v. City of New Orleans*, 94-2613 (La.App. 4 Cir. 9/15/95), 661 So.2d 1091, *reversed on other grounds sub nom Fauchaux v. City of New Orleans*, 95-2500 (La. 1/12/96), 666 So.2d 285.

Viewing the penalty issue contextually, we observe that LA.REV.STAT. ANN.§§ 23:1201(B), (C), (D), and (E) impose a twofold continuing obligation on the employer/insurer: (1) to pay all compensation and medical benefits due, i.e., payment of the correct amount owed, and (2) to pay for compensation and medical benefits within the time limit specified. It is further evident from the statute that should the employer/insurer not abide by those dictates, the Legislature has made available to the employee the provisions of LA.REV.STAT. ANN. § 23:1201(F) which provide for the assessment of a penalty as well as an award for reasonable attorneys' fees as a means to encourage compliance with the statutory obligations.

*Fontenot*, 836 So.2d at 23-24.

Therefore, since the legislature did not change subsection G when it amended subsection F, it must have intended that there be an $8,000.00 cap on penalties based on claims made by an employee against an employer for not paying benefits owed, but not on awards payable under the terms of a final, nonappealable judgment which the employer did not pay within thirty days after it became due.

Our conclusion that subsection F does not limit penalties under all subsections of La.R.S. 23:1201 to an aggregate of $8,000.00 is also based upon the basic jurisprudential principle that, "when interpreting the Workers' Compensation Act, courts must take into account the basic history and policy of the compensation movement." *Fontenot*, 836 So.2d at 20. The workers' compensation law is more

akin to social legislation because its purpose is to impose a duty on employers and insurers of a continuing obligation to pay an injured worker the maximum amount of benefits. *Id*. The penalty provisions were put in place to make defiant employers obey their obligations to injured workers. *Id*. "Courts should give effect to all parts of a statute and should not give a statute an interpretation that makes any part superfluous or meaningless, if that result can be avoided." *Succession of Boyter*, 99-761, p. 9 (La. 1/7/00), 756 So.2d 1122, 1129. The legislature must have intended that employers should be cast with a limit of $8,000.00 in penalties based on one or multiple claims made against them *and* also be subject to *additional* penalties for nonpayment of court-ordered judgments under La.R.S. 23:1201(G).

"Rules of statutory construction provide that where two statutes deal with the same subject matter, they should be harmonized if possible; however, if there is a conflict, the statute specifically directed to the matter at issue must prevail as an exception to the statute more general in character." *LeBreton v. Rabito*, 97-2221, p. 7 (La. 7/8/98), 714 So.2d 1226, 1229.

The second basic canon of statutory construction on which we base our conclusion that La.R.S. 23:1201(F) does not impose an $8,000.00 limit on all penalties assessed for all violations of subsections of La.R.S. 23:1201 is that when there appears to be a conflict between a generally-worded statute and one that is more specifically-worded, the specifically-worded statute controls. *Fontenot* at 28; *see also Champagne v. Ward*, 03-3211 (La. 1/19/05), 893 So.2d 773. Louisiana Revised Statutes 23:1201(F) refers generally to an employer's "failure to provide payment in accordance with this Section," while La.R.S. 23:1201(G) deals with the nonpayment of a *specific* violation: namely, an "award payable under the terms of a final, nonappealable judgment" not paid within thirty days of when it becomes due. Because

12

subsection G is specific and subsection F is more general, the specific subsection of the statute must be given priority. Louisiana Revised Statutes 23:1201(G) does not set a cap on penalties assessed under that subsection. Therefore, when the WCJ assessed LPSB $5,040.00 in penalties for the very late payment of the June 11, 2003 judgment, she was neither manifestly nor legally erroneous.

**Plaintiff's Answer**

Ms. Broussard asks for additional attorney fees for answering and defending this appeal. She also asserts that the WCJ failed to order legal interest on penalties and attorney fees assessed in the November 28, 2005 judgment, even though legal interest on those amounts was requested by Ms. Broussard in her motion filed in September of 2004. The November 28, 2005 judgment ordered LPSB to pay penalties and attorney fees. The interest that is owed on these amounts begins to run from the date of judgment. *Sharbono v. Steve Lang & Son Loggers*, 97-110 (La. 7/1/97), 696 So.2d 1382. This is because penalties and attorney fees represent a post-judgment debt owed to Ms. Broussard by LPSB; they do not represent deprivation of money owed to her by LPSB. In the case of interest on penalties and attorney fees, it is applied to encourage the employer to pay those sums as quickly as possible. *Id*.

> Because the losing party did not deprive the victor of the use of funds to which the victor was entitled, no prejudgment interest may be calculated on the award of attorney's fees. Rather, postjudgment interest on that amount may be calculated only from the date the debt came into being and thus became due to the date it is paid.

*Id*. at 1388.

The same logic applies to interest on penalties. All interest due on penalties can be calculated only from the date they become due until the date they are paid. *Id*.

We amend the November 28, 2005 judgment of the OWC to include interest on penalties and attorney fees, which began to accrue on the date of judgment.

We also award Ms. Broussard an additional $3,000.00 in attorney fees for the work required in defending and answering this appeal. After reviewing the entire record, we find that Ms. Broussard's attorney put in many hours of research preparing for this appeal and has performed in an exemplary fashion in protecting Ms. Broussard's interests.

IV.

**CONCLUSION**

An employer may not unilaterally discontinue payment of court-ordered benefits to an injured employee without first seeking court intervention. Because LPSB was under a court order to continue to pay TTD benefits to Ms. Broussard until further orders of the OWC, it was arbitrary and capricious in its actions in unilaterally terminating those benefits without first petitioning the court and proving that the benefits were no longer owed. We affirm the OWC judgment casting LPSB with $3,000.00 in penalties, $2,500.00 in attorney fees, and all court costs for its actions.

An employer may not ignore the terms of a judgment of the OWC and must pay all amounts due under the terms of a final, nonappealable judgment within thirty days after it becomes due. LPSB offered no legitimate reason why it failed to pay the judgment of June 11, 2003 until December 14, 2004. We affirm the award of $5,040.00 in penalties for the untimely payment of the June 11, 2003 judgment.

Since La.R.S. 23:1201(F) refers to claims made by employees against employers for either nonpayment or untimely payment of benefits owed or for not consenting to provide medical benefits, the penalty provision of that subsection setting an $8,000.00 limit for violations of that subsection does not apply to La.R.S.

14

23:1201(G). Subsection G refers to the untimely payment of a final, nonappealable judgment. There is no limit on the amount of the penalty that can be levied against an employer when the OWC chooses to assess the penalty at twenty-four percent of the unpaid award. Subsection F also refers more generally to claims for nonpayment of benefits, whereas subsection G refers more specifically to the untimely payment of final judgments of the OWC. We, therefore, find no manifest or legal error in the OWC judgment assessing penalties greater than $8,000.00 in the aggregate against LPSB for violating La.R.S. 23:1201(G) and La.R.S. 23:1201(I).

We also amend the judgment of the OWC to include legal interest which began to accrue on the date of the judgment. We also grant an additional $3,000.00 in attorney fees to Ms. Broussard for the work required in preparing for, defending, and answering this appeal. All costs of this appeal are assessed to LPSB.

**AMENDED AND, AS AMENDED, AFFIRMED**.