# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

### 09-991

**ROGER RIVERS**

**VERSUS**

**BO EZERNACK HAULING
CONTRACTOR, INC. AND
BRIDGEFIELD CASUALTY
INSURANCE COMPANY**

**********

APPEAL FROM THE
OFFICE OF WORKERS' COMPENSATION, DISTRICT 2,
PARISH OF RAPIDES, NO. 08-02372
HONORABLE JAMES L. BRADDOCK, WORKERS' COMPENSATION
JUDGE

**********

**J. DAVID PAINTER
JUDGE**

**********

Court composed of John D. Saunders, Marc T. Amy, and J. David Painter, Judges.

**AFFIRMED.**

**Donald J. Anzelmo, Attorney at Law**
**1503 North 19th Street**
**Monroe, LA 71207**
**Counsel for Defendants-Appellants:**
    **Bo Ezernack Hauling Contractor, Inc. and**
    **Bridgefield Casualty Insurance Company**

**R. Bray Williams, Attorney at Law**
**P.O. Box 15**
**Natchitoches, LA 71458-0015**
**Counsel for Plaintiff-Appellee:**
    **Roger Rivers**

**PAINTER, Judge.**

The employer and its insurer appeal the judgment of the Workers' Compensation Judge (WCJ) in favor of the employee. The employee answers the appeal seeking additional attorney's fees for work done on appeal. For the following reasons, we affirm the judgment and award $5,000.00 in additional attorney's fees for work done on appeal.

## FACTUAL AND PROCEDURAL BACKGROUND

It is undisputed that the employee, Roger Rivers, was involved in an accident on October 10, 2007, wherein the fully-loaded log truck he was driving overturned, while in the course and scope of his employment with Bo Ezernack Hauling Contractor, Inc. (Ezernack Hauling). The average weekly wage of $714.00 and compensation rate of $476.02 are undisputed.

Rivers refused treatment at the time of the accident but did take three days off of work. He contends that he continued to work in pain. His last day at work with Ezernack Hauling, which is owned by Rivers' nephew, was January 25, 2008. Defendants contend that Rivers' employment was terminated due his consistently being late for work. Rivers was not seen by any physician in connection with the subject accident until February 12, 2008, some four months after the accident and after his separation of employment with Ezernack Hauling. At that time, he saw Dr. Miller at the Zwolle Medical Clinic and complained of neck pain, back pain, and numbness in his fingers extending up to his elbows. Dr. Miller took Rivers off of work at that time. Rivers returned to Dr. Miller on February 21, 2008, and complained of neck pain, bilateral hand and arm pain, low back pain radiating down his right leg, and right knee pain. Rivers saw Dr. Miller again on February 26 and March 3, 2008. Dr. Miller diagnosed Rivers with a herniated nucleus pulposus in the cervical and lumbar spine.

Rivers filed a motion for expedited hearing on March 27, 2008, which resulted in an order that Rivers was entitled to see Dr. Pierce Nunley, his choice of orthopedic surgeon. He was examined by Dr. Nunley on August 7, 2008, at which time Dr.

1

Nunley recommended cervical and lumbar MRIs. Both cervical and lumbar MRIs were performed on February 20, 2009. The cervical MRI showed central disc herniation at C3-4 with cord contact and flattening of the cervical cord; central disc herniation at C4-5, cord flattening, and cord signal changes; central disc protrusion at C5-6 with mild flattening of the cord and neuroforaminal narrowing on the right; and mild degenerative changes at C6-7. The MRI of the lumbar spine showed broad-based disc bulge, facet hypertrophy, and severe stenosis in the subfacet region and centrally at L2-3; broad-based disc bulge, fact hypertrophy, subfacet stenosis bilaterally likely affecting the L4 nerve roots at L3-4; severe spondylosis and severe central and lateral stenosis at L4-5; and disc herniation eccentric to the left, evidence of a previous right-sided decompression, and severe displacement of the left S1 nerve root at L5-S1. Following the MRIs, Dr. Nunley recommended a cervical laminoplasty at C3 through C6 as well as a miltilevel lumbar decompression to the sacrum.

Defendants contended that Rivers did not sustain any injury in the subject accident. Following trial, the WCJ found in favor of Rivers. Specifically, the WCJ found that Rivers was injured in the course and scope of his employment. The judgment ordered Defendants to: (1) authorize and pay for treatment by Dr. Nunley for cervical and lumbar spinal injuries; (2) pay temporary total disability (TTD) benefits in the amount of $476.02 per week from February 1, 2008 until further order of the court together with legal interest from the date of judicial demand until paid; (3) pay a twelve percent (12%) penalty on all back owed TTD benefits for the arbitrary and capricious failure to pay TTD benefits together with legal interest from the date of judgment until paid; (4) pay a statutory penalty in the amount of $3,000.00 for the arbitrary and capricious failure to timely and properly pay the May 20, 2008 judgment together with legal interest on the penalty from the date of judgment until paid; (5) pay a statutory penalty in the amount of $2,000.00 for the arbitrary and capricious failure to timely authorize the MRIs prescribed by Dr. Nunley together with legal interest on the penalty from the date of judgment until paid; (6) pay

2

attorney's fees in the amount of $7,500.00 together with legal interest from the date of judgment until paid; and (7) pay all costs of the proceedings together with legal interest from the date of judgment until paid. This appeal followed.

**DISCUSSION**

Defendants first contend that the trial court erred in finding that Rivers sufficiently met his burden of proving entitlement to compensation benefits and medical expenses as a result of the accident. Defendants aver that the WCJ's decision to award benefits hinged solely on Rivers' credibility and that the WCJ's decision was manifestly erroneous in light of the "substantial evidence at trial which discredited the credibility" of Rivers.

A "workers' compensation judge's determinations on whether the employee's testimony was credible and on whether the employee met his burden of proof are factual findings not to be disturbed on appeal absent manifest error." *Jack v. Prairie Cajun Seafood Wholesale*, 07-102, pp. 4-5 (La.App. 3 Cir. 10/3/07), 967 So.2d 552, 555-56, *writ denied*, 07-2388 (La. 2/15/00), 976 So.2d 178 (citations omitted). In *Corbello v. Coastal Chem. Co., Inc.*, 02-1241, p. 3 (La.App. 3 Cir. 3/5/03), 839 So.2d 1152, 1154, *writ denied*, 03-994 (La. 5/30/03), 845 So.2d 1051 (quoting *Mitchell v. Brown Builders, Inc.*, 35,022, p. 8 (La.App. 2 Cir. 8/22/01), 793 So.2d 508, 515, *writ denied*, 01-2649 (La. 12/14/01), 804 So.2d 636), this court stated:

> It is a well-settled legal principle that the factual findings in workers' compensation cases are entitled to great weight. Reasonable evaluations of credibility and reasonable inferences of fact will not be disturbed even though the appellate court may feel that its own evaluations and inferences are as reasonable. The trier of fact's factual determinations shall not be disturbed in the absence of a showing of manifest error. When the trier of fact's findings are reasonable in light of the entire record, an appellate court may not reverse a choice between two permissible views of the evidence.

Rivers testified that he had a prior back surgery in 1987 as a result of an accident that occurred while he was working for Rivers and Ezernack but that he had not had any real problems with his back after that surgery except that his back was sore every now and then. Medical records introduced at trial showed that he received treatment for back complaints in 2002, 2005, and 2007 (some nine months before the

3

subject accident). After the subject accident, Rivers was also involved in an automobile accident while driving his brother's pick-up truck. Rivers testified that he was uninjured in that accident. Rivers also testified that he worked for Malmay Logging after his employment with Ezernack Hauling was terminated. When asked why he told John Garcia, the Defendants' investigator, that he had not been employed, he testified that he was scared and nervous and that he didn't feel like he needed to tell Garcia anything else after he realized why Garcia was asking him questions. Rivers went to work for Malmay Logging on January 28, 2008, but was terminated a few days later because he was unable to perform his duties.

Rivers testified that following the subject accident, the lower part of his back and his neck started hurting and the tips of his fingers started getting numb. He further testified that this pain was different from the pain he felt following his previous back surgery. He testified that the pain caused him not to be able to get up in the mornings, which led to his being fired.

In the case sub judice, Rivers' testimony was corroborated by the circumstances following the alleged incident, i.e., he attempted to work but could not. Additionally his testimony was corroborated by the medical evidence submitted. There is evidence which discredits or casts doubt upon Rivers' credibility in the form of his inconsistent statements to Garcia. But, we are mindful that when there is a conflict in the testimony, as in this case, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even though we may feel our own inferences and evaluations are as reasonable. *Rosell v. ESCO*, 549 So.2d 840 (La.1989). Moreover, even though Rivers was injured in a prior accident, it has no bearing on this case. A claimant's recovery under Louisiana's workers' compensation laws is not barred by a pre-existing condition because an employer takes the employee as he finds him. *Fontenot v. Wal-Mart Stores, Inc.*, 03-1570 (La.App. 3 Cir. 4/7/04), 870 So.2d 540, *writ denied*, 04-1131 (La. 6/25/04), 876 So.2d 843.

4

The WCJ had the benefit of all of Rivers' medical records and heard extensive cross-examination of him regarding his prior condition and how that condition affected him as well as how the subject accident affected his condition and his ability to work. The WCJ found that this evidence was sufficient to prove that Rivers' back problems were caused by the subject accident. We find no manifest error in the WCJ's conclusion that Rivers was injured in the course and scope of his employment or in its ordering Defendants to authorize and pay for treatment by Dr. Nunley for cervical and lumbar spinal injuries.

Defendants further contend that the WCJ erred in finding that they were arbitrary and capricious in the failure to pay TTD benefits and medical expenses. Defendants aver that their denial of this claim was based upon a serious defense made in good faith such that award of penalties and attorney's fees in precluded.

"The determination of whether an employer should be cast with penalties and attorney fees is a question of fact which should not be reversed absent manifest error." *Sigler v. Rand*, 04-1138, pp. 10-11 (La.App. 3 Cir. 12/29/04), 896 So.2d 189, 196, *writ denied*, 05-278 (La. 4/1/05), 897 So.2d 611 (citing *Romero v. Northrop-Grumman*, 01-24 (La.App. 3 Cir. 5/30/01), 787 So.2d 1149, *writ denied*, 01-1937 (La. 10/26/01), 799 So.2d 1144). Arbitrary and capricious behavior has been defined as "'willful and unreasonable action, without consideration and regard for the facts and circumstances presented." *Reed v. State Farm Mut. Auto. Ins. Co.*, 03-107 (La. 10/21/03), 857 So.2d 1012, 1021, fn. 8 (citing *J.E. Merit Constructors, Inc. v. Hickman*, 00-943 (La.1/17/01), 776 So.2d 435).

Defendants presented no testimony concerning their investigation or reasoning which led to denying that Rivers was injured. Defendants argued that medical records point to a pre-existing condition and presented the testimony of Ezernack that Rivers was not injured in the accident. Again, we note that a pre-existing condition does not bar a claimant's recovery. We find no manifest error in the WCJ's determination that Defendants are subject to penalties and attorney's fees.

5

Defendants finally contend that the award of penalties in this case exceeds the maximum allowed by statute. The total penalties awarded in this case exceeded $11,000.00. However, the penalties were made under two separate provisions.

Louisiana Revised Statutes 23:1201(F) provides, in pertinent part:

> Failure to provide payment in accordance with this Section or failure to consent to the employee's request to select a treating physician or change physicians when such consent is required by R.S. 23:1121 shall result in the assessment of a penalty in an amount up to the greater of twelve percent of any unpaid compensation or medical benefits, or fifty dollars per calendar day for each day in which any and all compensation or medical benefits remain unpaid or such consent is withheld, together with reasonable attorney fees for each disputed claim; however, the fifty dollars per calendar day penalty shall not exceed a maximum of two thousand dollars in the aggregate for any claim. The maximum amount of penalties which may be imposed at a hearing on the merits regardless of the number of penalties which might be imposed under this Section is eight thousand dollars.

Louisiana Revised Statutes 23:1201(G) provides:

> If any award payable under the terms of a final, nonappealable judgment is not paid within thirty days after it becomes due, there shall be added to such award an amount equal to twenty-four percent thereof or one hundred dollars per day together with reasonable attorney fees, for each calendar day after thirty days it remains unpaid, whichever is greater, which shall be paid at the same time as, and in addition to, such award, unless such nonpayment results from conditions over which the employer had no control. No amount paid as a penalty under this Subsection shall be included in any formula utilized to establish premium rates for workers' compensation insurance. The total one hundred dollar per calendar day penalty provided for in this Subsection shall not exceed three thousand dollars in the aggregate.

The penalty in the amount of $3,000.00 for the arbitrary and capricious failure to timely and properly pay the May 20, 2008 judgment together with legal interest on the penalty from the date of judgment until paid was made under La.R.S. 23:1201(G) while the remaining penalties were made under La.R.S. 23:1201(F). Subsection F does not limit penalties under all subsections of La.R.S. 23:1201 to an aggregate of $8,000.00. *Broussard v. Lafayette Parish Sch. Bd.*, 939 So.2d 662 (La.App. 3 Cir. 9/27/06), *writ denied*, 06-2591 (La. 1/12/07), 948 So.2d 152. Therefore, the total amount of penalties awarded under La.R.S. 23:1201(F) does not exceed $8,000.00, and we find no merit in this assignment of error by Defendants.

Rivers alleges that the WCJ erred in failing to order Defendants to pay $1,114.73 for the unpaid charges of Dr. Miller as well as a $2,000.00 statutory penalty and attorney's fees for Defendant's failure to pay said charges. Although, Rivers answered the appeal seeking additional statutory penalties and attorney's fees for work done on appeal, he did not appeal the issue of the WCJ's failure to order Defendants to pay Dr. Miller's unpaid charges. We find that the conclusory statement in the answer to appeal that Rivers "seeks additional statutory penalties" is not sufficient to preserve the issue of non-payment of Dr. Miller's fees for appeal. We do not have the benefit of written reasons for judgment, but we note that counsel for Rivers prepared the judgment signed by the WCJ. We do, however, award an additional $5,000.00 in attorney's fees for work done on appeal.

**DECREE**

For all of the foregoing reasons, the judgment of the WCJ is affirmed. We further award an additional $5,000.00 in attorney's fees for work done on appeal. All costs of this appeal are assessed to Defendants-Appellants, Bo Ezernack Hauling Contractor, Inc. and Bridgefield Casualty Insurance Company.

**AFFIRMED.**