I2PARRO, Judge.
This is a workers’ compensation action in which an employee, Whitney Tyler (“Tyler”), sought to recover benefits for total disability, medical expenses, attorney’s fees and penalties as a result of injuries suffered while in the course and scope of his employment with Harvey Hyland, Inc. (“Harvey”). The trial court ruled in favor of Tyler, awarding supplemental earnings benefits (“SEB”) and certain medical expenses. From this judgment, Tyler appealed, and Harvey and its insurer filed an answer to his appeal. For the following reasons, we affirm.
Facts and Procedural History
Tyler was employed by Harvey as a supervisor of manual laborers who moved office furniture. On January 18, 1989, while lifting a heavy steel desk which was to be loaded onto a truck, Tyler felt a severe and sudden pain in his back. On January 31,1989, Tyler saw Dr. Thomas Flynn, a neurosurgeon, *836 whose diagnosis was a recurrent disc rupture. Dr. Flynn performed surgery on February 21, 1989, and treated Tyler on a regular basis until November 6, 1989, when he discharged Tyler and released him to return to his usual and ordinary occupation.
Because of this injury, Harvey’s insurer, Rockwood Insurance Company (“Rock-wood”), paid full workers’ compensation benefits for temporary total disability in the amount of $175 per week to Tyler from the time of his injury until June 14, 1989, from July 25, 1989, through September 5, 1989, and from November 18,1989, through March 2, 1990. During the interim periods and after March 2, 1990, defendants paid Tyler SEB in the amount of $752.50 per month. SEB payments were ongoing at the time of trial.
Tyler filed a suit against Harvey and Rockwood in district court on February 20, 1990, at a time when they were allegedly refusing to pay Tyler any benefits. Rock-wood and Harvey filed an answer, contending Tyler was able to perform the duties of his employment. On October 7,1993, Tyler filed an amending and supplemental petition substituting Louisiana Insurance Guaranty Association (“LIGA”), Rockwood’s successor, as a party defendant. In their answer to this petition, LIGA and Harvey denied any continuing liability to Tyler and particularly denied any responsibility for the charges of Dr. _|3Luther Stewart. Following LIGA’s refusal to pay benefits, Tyler requested a trial date be set.
Following the trial of this matter, the trial court rendered judgment, awarding Tyler $447.92 per month in SEB, retroactive to August 25, 1994, and continuing for a period not to exceed 270 weeks (520 less 250). The judgment also awarded medical expenses for Dr. Stewart’s services in the amount of $4,892, and costs. In addition, the judgment ordered defendants to provide rehabilitation services pursuant to LSA-R.S. 23:1226, as that statute was in effect on January 18, 1989. Tyler’s request for medical expenses in excess of $4,892, penalties, and attorney’s fees were denied.
Tyler appealed, contending the trial court erred in reducing his weekly or monthly compensation benefits, in limiting the defendants’ responsibility for payment of medical expenses, and in failing to award penalties and attorney’s fees. In their answer to Tyler’s appeal, LIGA and Harvey seek a reversal or reduction of the medical expenses award, a reduction of the SEB award, and an award of all or part of the court costs against Tyler.[1] In the event this court finds Tyler permanently totally disabled, defendants request an offset for Tyler’s receipt of social security disability benefits.

Standard of Review

In a workers’ compensation case, as in other cases, the appellate court’s review of factual findings is governed by the manifest error or clearly wrong standard. Smith v. Louisiana Dept. of Corrections, 93-1305, p. 3 (La.2/28/94), 633 So.2d 129, 132; Kennedy v. Security Industrial Ins. Co., 623 So.2d 174, 175 (La.App. 1st Cir.), writs denied, 629 So.2d 389 and 630 So.2d 251 (La.1993). The two-part test for the appellate review of facts is: 1) whether there is a reasonable factual basis in the record for the finding of the trial court, and 2) whether the record establishes that the finding is not manifestly erroneous. Mart v. Hill, 505 So.2d 1120, 1127 (La.1987). If a reasonable factual basis exists, an appellate court may set aside a trial court’s factual finding only if, after reviewing the record in its entirety, it determines the trial court’s finding was clearly wrong. Stobart v. State, Through Dept. of Transportation and Development, 617 So.2d 880, 882 (La.1993). Even though an appellate court may feel its own evaluations and inferences are more reasonable than the fact finder’s, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review where conflict exists in the testimony. Id. Where there are two permissible views of the evidence, the fact finder’s choice between them cannot be manifestly erroneous or *837 clearly wrong. Morris v. Norco Const. Co., 632 So.2d 332, 336 (La.App. 1st Cir.1993), writ denied, 94-0591 (La.4/22/94), 637 So.2d 163.

Discussion

After a thorough review of the record, we are convinced there was a reasonable factual basis to support the following findings by the trial court: Tyler’s condition was not of a temporary nature because he had attained maximum medical improvement; Tyler was not entitled to permanent total disability benefits; Tyler was both physically and intellectually capable of engaging in at least minimum wage employment for an average of twenty-five hours per week; the services of Dr. Luther Stewart were of a nonemergency nature; LIGA denied responsibility for the costs of Dr. Stewart’s services rendered after July 18, 1991; and Dr. Stewart’s office was verbally informed of LIGA’s refusal to consent to further medical treatment on November 7,1991. This court further concludes the record establishes these factual determinations of the trial court were not manifestly erroneous.
Having reached the foregoing conclusions, we now address the issue of LIGA’s liability for the payment of health care services rendered to Tyler by Dr. Stewart. The trial court limited its award to $4,892, based on its conclusion that LIGA was only responsible for medical expenses incurred as a result of treatments up to November 7, 1991.
Tyler contends the trial court erred in limiting LIGA and Harvey’s responsibility for payment of medical expenses associated with Dr. Stewart’s treatments, which he claims were reasonable and necessary. He argues that the mutual consent prerequisite of LSA-R.S. 23:1142(B) is inapplicable because the payor denied the injury was com-pensable. Tyler urges the applicability of LSA-R.S. 23:1142(E), claiming the defendants denied the compensability of his injury when they terminated the payment of weekly or monthly benefits on several occasions. Tyler also submits the filing of their answers to his original ^petition and amending and supplemental petition constituted a denial of compensability. In support of this argument, Tyler cites INA v. Hayes, 93-1648 (La.App. 3rd Cir. 8/31/94), 643 So.2d 190, writ denied, 94-2471 (La.12/9/94) 647 So.2d 1113.
Defendants contend the trial court erred in awarding $4,892 in medical expenses for services rendered by Dr. Stewart prior to November 8,1991. They advanced two theories to support this contention: (1) LSA-R.S. 23:1203(A) only imposes liability for costs associated with necessary medical treatment and (2) LSA-R.S. 23:1142(B) limits recovery to $750 (which they submit has already been paid by Rockwood), because LIGA did not consent to the treatment.
To recover medical expenses, the claimant must link the medical expenses to the work injury. See Gross v. Continental Ins. Co., 451 So.2d 1285, 1288 (La.App. 1st Cir.1984). LSA-R.S. 23:1203(A), in pertinent part, requires the employer to “furnish all necessary drugs, supplies, hospital care and services, medical and surgical treatment, and any nonmedical treatment recognized by the laws of this state as legal.” The burden of proof is on the claimant to show by a preponderance of the evidence that the medical services were necessary and to show the value of those services. Stewart v. Self-Insurer’s Bureau, 626 So.2d 34, 36-37 (La. App. 1st Cir.1993). The purpose for this section is obviously to make available to the claimant the medical and related care that he needs at no cost to him. Wex S. Malone & . H. Alston Johnson, III, Workers’ Compensation Law and Practice § 287 at 788, in 13 Louisiana Civil Law Treatise (3rd ed.1994).
Assuming the medical services were necessary, LSA-R.S. 23:1142 limits the reimbursement due for certain medical expenses. With respect to reimbursement for nonemer-gency care, LSA-R.S. 23:1142(B), at all pertinent times, provided:
Except as provided herein, each health care provider may not incur more than a total of seven hundred fifty dollars in non-emergency diagnostic testing or treatment without the mutual consent of the payor and the employee. Except as provided herein, that portion of the fees for non-emergency services of each health care *838 provider in excess of seven hundred fifty dollars shall not be an enforceable obligation against the employee or th& employer or the employer’s worker’s compensation insurer unless the employee and the payor have agreed upon the diagnostic testing or treatment by the health care provider.
| (¡Generally, an employee must receive prior approval from his employer before he seeks nonemergency medical attention for a work-related accident or injury. LSA-R.S. 23:1142(B); INA v. Hayes, 643 So.2d at 195. This statute allows a health care provider to incur up to $750 in nonemergency diagnostic testing and treatment without the mutual consent of the payor, who is the entity responsible, whether by law or contract, for the payment of the medical expenses incurred by a claimant as a result of a work-related injury. See LSA-R.S. 23:1142(A). However, where there has been no approval, the claimant’s right to reimbursement is limited to $750, but such recovery is contingent on proof by the claimant that the treatment cost at least $750 and was medically necessary. See Stewart v. Self-Insurer’s Bureau, 626 So.2d at 37-39.[2] If the health care provider incurs more than an aggregate of $750 for such services without first obtaining the mutual consent of the payor and the employee, the obligation to pay for such services is not enforceable against the employee, the employer, or the employer’s workers’ compensation insurer. LSA-R.S. 23:1142(B); see Stewart v. Self-Insurer’s Bureau, 626 So.2d at 36.
On July 20, 1990, approximately one year and five months after his surgery, Tyler went to see Dr. Stewart for the first time and complained of pain in his back, lower extremities, and neck. He also complained of an occasional severe headache. In his initial report to Rockwood, dated July 20, 1990, Dr. Stewart recommended a plan of treatment and suggested the recommended treatment be followed by one or two weeks of modalities of therapy. According to Dr. Stewart, Carey Snyder (a representative of Rock-wood) gave him the “okay” to treat Tyler and give him epidurals to relieve pain. The evidence reveals Dr. Stewart wrote to Rock-wood on December 7,1990, and June 3, 1991, to inform it that Tyler had reached maximum medical benefit, but was in need of ^continuing treatment for pain. Dr. Stewart’s care of Tyler included the following nonexclusive methods of treatment: transcu-taneous electrical nerve stimulator (“TENS”) treatment, hot packs, massages, ultrasound, a myofascial injection, epidural steroid injections, a thermogram, Beta blockers, calcium channel blockers, and traction. The record shows that Rockwood paid Dr. Stewart a total of $13,313.50 for the treatment rendered from July 20, 1990, to July 19, 1991. Payment by Rockwood then ceased due to its liquidation. In August 1991, Dr. Stewart received correspondence notifying him that Rockwood had been placed into liquidation, effective August 26, 1991. Nonetheless, Dr. Stewart continued to treat Tyler since he did not receive any correspondence from Rock-wood, LIGA, or anyone else notifying him that the defendants were denying further treatment or further authorization of treatment. On the other hand, neither did he receive any statement from LIGA indicating it would be responsible for the costs of Tyler’s treatment. No further payment was made by LIGA. At the time of trial, the unpaid balance on Tyler’s account was $38,-039.50.
*839 Gloria Husser began reviewing Tyler’s file on LIGA’s behalf in October 1991. Ms. Hus-ser testified she received a telephone call from someone with Dr. Stewart’s office on November 7,1991, regarding the payment of Tyler’s balance. During this conversation, Ms. Husser notified Dr. Stewart’s office she would not authorize treatment. LIGA’s November 7, 1991 verbal denial of payment is corroborated by a November 8, 1991 letter from Dr. Stewart to Tyler’s attorney.
The trial court apparently found Ms. Hus-ser’s November 7, 1991 communication with someone in Dr. Stewart’s office effectuated a withdrawal of Rockwood’s earlier agreement to pay. Although specific details (e.g., the type and duration of the treatment authorized) about Rockwood’s initial authorization were not made of record, we note the record shows Rockwood voluntarily paid Dr. Stewart from August 1990, to July 1991, and only discontinued payment due to its liquidation. Although LIGA assumed Rockwood’s obligations in late August 1991, Tyler’s file was not reviewed by LIGA’s representative until October, 1991. Shortly afterward, on November 7, Ms. Husser notified someone with Dr. Stewart’s office of LIGA’s refusal to pay.
IsAlthough we are mindful that the payment of medical expenses shall not constitute an admission of liability for compensation, we conclude there was a reasonable factual basis to support the trial court’s determination that the mutual consent between the payor and Tyler continued until November 7, 1991, and such determination was not manifestly erroneous. See LSA-R.S. 23:1204; Johnson v. Chateau Living Center, 94-989, p. 9 (La. App. 5th Cir. 4/25/95), 653 So.2d 1367, 1372. In Johnson, medical bills were submitted and paid by the employer. Although the employer changed its mind about payment of these medical expenses, it did not so notify the health care provider. The court found that the initial authorization for treatment by a health care provider was sufficient to establish claimant’s entitlement to medical expenses and transportation costs. Johnson v. Chateau Living Center, 653 So.2d at 1372 n. 1. Similarly, because Rockwood approved and paid for medical expenses incurred as a result of treatment rendered by Dr. Stewart, the trial court correctly found its successor, LIGA, was responsible for such expenses until approval was withdrawn on November 7,1991.
Since there was no mutual approval for treatments rendered by Dr. Stewart after November 7, 1991, Tyler’s recovery of any additional sum is initially contingent on proof that such treatment was medically necessary. See Stewart v. Self-Insurer’s Bureau, 626 So.2d at 39. The trial court did not make a specific finding regarding the necessity of Dr. Stewart’s post-November 7, 1991 treatment. However, the trial court held that LIGA’s refusal to consent to payment of Dr. Stewart’s services was supported by the record. Implicit in this determination is the finding that these services were not medically necessary.
This implicit finding of the trial court is supported by the record. Dr. Flynn performed surgery for Tyler’s recurrent disc rupture on February 21, 1989. Tyler was released to return to light duty work by Dr. Flynn on a trial basis in June 1989. In July 1989, Tyler stopped working and continued to follow up with Dr. Flynn. The results of a myelogram and CAT scan taken in August 1989, did not show any evidence of an extraordinary problem. Dr. Flynn discharged Tyler from his care on November 6, 1989, since he believed there was no need for further medical treatment or neurosurgical follow-up. He felt that Tyler did not need physical therapy, pain management or medi-caljgsupportive care. According to Dr. Flynn, Tyler should have returned to his usual and ordinary occupation at that time.
Tyler began seeing Dr. Stewart on July 20, 1990. Although Dr. Stewart initially recommended one to two weeks of modalities of therapy, he continued to provide such treatment through the time of trial, which was approximately a four-year period. In Dr. Stewart’s opinion, Tyler had reached maximum medical benefit as early as December 7, 1990. Nonetheless, Dr. Stewart felt Tyler was in need of continuing treatment even though the laboratory and supportive evidence showed no abnormalities. According to Dr. Stewart, the treatments were necessary to maintain Tyler’s level of function and *840 to alleviate pain. His condition remained essentially the same, yet Dr. Stewart felt that Tyler’s condition should not be left untreated as long as he was having symptoms. In Dr. Stewart’s opinion, Tyler needed long term treatment.
Dr. Flynn reevaluated Tyler on February 25,1993, and on August 9,1994. His opinion remained basically unchanged. Although Dr. Flynn agreed it was not unusual to have a surgery patient who continued to have subjective complaints, he opined that the modalities of treatment performed by Dr. Stewart were not necessary for management of Tyler’s condition because they were not designed to produce back rehabilitation. Dr. Flynn testified that Dr. Stewart’s treatment was excessive, especially when considering the indefiniteness of Dr. Stewart’s plan.
Dr. John E. Nyboer, who specializes in physical medicine and rehabilitation, examined Tyler on August 9, 1994. According to Dr. Nyboer, the passive modalities prescribed by Dr. Stewart were ineffective in substantially relieving Tyler’s condition. In his opinion, Dr. Stewart’s treatments were designed to help alleviate the perception of pain and did not produce any lasting benefits. Dr. Nyboer testified that Dr. Stewart’s methods of treatment had not been effective in substantially relieving or significantly changing Tyler’s condition. He believed that the treatments were excessive, and he would not have recommended continuation of those types of treatment for that duration under any circumstances. Dr. Nyboer recommended an active treatment of Tyler’s condition which would include a full exercise program to recondition Tyler’s back, as opposed to the passive treatments being rendered by Dr. Stewart.
hoTyler had the burden of proving by a preponderance of the evidence that the post-November 7, 1991 medical services were necessary and of showing the value of those services. See Stewart v. Self-Insurer’s Bureau, 626 So.2d at 36-37. After considering the evidence presented on this point, we conclude that Tyler failed to submit satisfactory proof that the post-November 7, 1991 treatments were medically necessary. There was ample support in this record for the trial court’s implicit finding on this issue. Accordingly, the trial court did not err in concluding that the defendants were not obligated by LSA-R.S. 23:1203 to furnish or pay for any expenses related to the post-November 7, 1991 services provided by Dr. Stewart.
Furthermore, as a result of this finding that the post-November 7, 1991 treatments were not medically necessary, we reject Tyler’s argument that he is entitled to reimbursement under LSA-R.S. 23:1142(E). LSA-R.S. 23:1142(E) provides an exception to the approval requirement when the payor has denied the employee’s injury is compen-sable. However, although subsection “E” does not require a claimant to seek approval prior to receiving medical treatment, reimbursement of all medical expenses under LSA-R.S. 23:1142(E) is limited by LSA-R.S. 23:1203(A) to those which are necessary. Herrell v. Tempo Personnel, 633 So.2d 690, 693 (La.App. 1st Cir.1993), writ denied, 94-0236 (La.3/18/94), 635 So.2d 1101. Because Tyler failed to prove the post-November 7, 1991 treatments were necessary, we do not reach the applicability of LSA-R.S. 23:1142(E).[3] The trial court correctly found Harvey and LIGA were not responsible for reimbursing Dr. Stewart for those treatments.

Decree

For the foregoing reasons, the judgment of the trial court is affirmed. Costs of this appeal are assessed to Tyler.
AFFIRMED.

. In their brief to this court, defendants abandoned their request that Tyler be assessed with all or part of the court costs.

. In Stewart v. Self-Insurer's Bureau, the claimant sought treatment from Dr. Luther Stewart nineteen times without notice to or prior approval from the payor. Of the greater than $4,000 of medical expenses incurred by the worker for such treatment, .the payor voluntarily paid $703.33 — the charges for the medical treatment its expert considered to be reasonable and necessary. In a suit brought by the health care provider, the hearing officer found the treatment was of a nonemergency nature and consent for treatment had not been obtained. Therefore, the hearing officer awarded Dr. Stewart the statuto-iy limit of $750 for non-approved, nonemergency service, subject to the amount previously paid. On appeal, this court refused to allow the health care provider to recover the costs of medical treatment that was not proven by the plaintiff to be necessary. Since the health care provider failed to prove the necessity of treatments costing in excess of $703.33, this court held the health care provider was not entitled to recover any additional amount even though the amount previously paid was less than the $750 amount set forth in LSA-R.S. 23:1142(B). Stewart v. Self-Insurer’s Bureau, 626 So.2d at 39.

. We note that the parties stipulated that the defendants have continuously and voluntarily paid disability compensation benefits since the time of the accident. This distinguishes this case from Herrell, where the defendants terminated workers’ compensation benefits after having paid them for a period of time. For the same reason, the case of INA v. Hayes, 643 So.2d 190, is also distinguishable.