# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 10-261
## consolidated with 10-262 and 10-263

**LAKE CHARLES MEMORIAL HOSPITAL**
**(STEPHEN BABIN)**

**VERSUS**

**HOBBY LOBBY STORES, INC.**

************

APPEAL FROM THE
OFFICE OF WORKERS' COMPENSATION, DISTRICT 3
PARISH OF CALCASIEU, NO. 05-01207
SHELLY D. DICK, WORKERS' COMPENSATION JUDGE

************

## DAVID E. CHATELAIN[*]
## JUDGE

************

Court composed of Sylvia R. Cooks, J. David Painter, and David E. Chatelain, Judges.

**AFFIRMED IN PART; REVERSED IN PART; RENDERED.**

Thomas A. Filo
Cox, Cox, Filo, Camel & Wilson, L.L.C.
723 Broad Street
Lake Charles, Louisiana 70601
(337) 436-6611
Counsel for Plaintiff/Appellant:
    Lake Charles Memorial Hospital

---

[*]Honorable David E. Chatelain participated in this decision by appointment of the Louisiana Supreme Court as Judge Pro Tempore.

**John V. Quaglino**
**Denis P. Juge**
**Juge, Napolitano, Guilbeau,**
  **Ruli, Frieman & Whiteley**
**3320 W. Esplanade Avenue North**
**Metairie, Louisiana  70002**
**(504) 831-7270**
**Counsel for Defendant/Appellee:**
    **Hobby Lobby Stores, Inc.**

**CHATELAIN, Judge.**

In these consolidated cases, a health care provider appeals the denial of its claims that the employer of three workers' compensation claimants underpaid charges for medical treatment the health care provider rendered to the claimants and that the underpayment was arbitrary and capricious, entitling it to penalties and attorney fees. For the following reasons, we reverse the denial of the health care provider's claims and award penalties and attorney fees for the underpayment. We also affirm the award of penalties and attorney fees for late reimbursement of the claims.

**FACTS**

In 2002 and 2003, three employees of Hobby Lobby Stores, Inc. (Hobby Lobby) in Lake Charles were injured in the course and scope of their employment and sought treatment for their injuries at Lake Charles Memorial Hospital (LCMH). LCMH submitted bills for services it rendered to the employees of Hobby Lobby; Hobby Lobby remitted payments which were less than the amounts set forth in the Louisiana Workers' Compensation Reimbursement Schedule (Reimbursement Schedule), as provided in La.R.S. 23:1034.2, and more than sixty days after receiving notice of the bills in derogation of La.R.S. 23:1201(E).

The reimbursement payments Hobby Lobby remitted were calculated pursuant to the provisions of a Preferred Provider Organization (PPO) Hospital Agreement LCMH had with CorVel Corporation (CorVel) and a Workers' Compensation Managed Care Service Agreement Hobby Lobby had with CorVel. In the PPO agreement, LCMH agreed to provide hospital and physician services to CorVel beneficiaries, such as Hobby Lobby's employees, at "85% of billed charges," "85% of usual and customary rates," or "85% of any applicable maximum allowable rate as

1

specified by the State, whichever is less." Following receipt of Hobby Lobby's payments, LCMH filed disputed claims to recover "[u]nderpayment and/or late payment of medical bills" and "penalties and attorney fees for arbitrary and capricious handling" of each of the three employees' claims.

The three claims were consolidated and tried. With regard to each of the three claims, the workers' compensation judge (WCJ) denied LCMH's claims for underpayment and penalties and attorney fees for Hobby Lobby's arbitrary and capricious handling of the claims but awarded $2000 in penalties and attorney fees of $1000 because the reimbursement payments were "late."

LCMH appealed, seeking reversal of the denial of its claims and an award of penalties and attorney fees for Hobby Lobby's failure to pay the full amount of its claims. Hobby Lobby answered the appeal, seeking reversal of the penalties and attorney fees for the late payment of LCMH's claims.

## ISSUES PRESENTED

LCMH's assignments of error and Hobby Lobby's answer present the following issues for our consideration: (1) Did the WCJ err in dismissing LCMH's claims for underpayment? (2) If the WCJ erred in dismissing LCMH's claims for underpayment, was Hobby Lobby's underpayment arbitrary and capricious, entitling LCMH to penalties and attorney fees? and (3) Does a health care provider have a claim for penalties and attorney fees for late payment of a claim for services rendered?

2

*PPO Discount*

LCMH asserts that the WCJ erred in concluding that Hobby Lobby "made a *prima facie* showing of a defense" to its claim of underpayment because LCMH agreed in its PPO agreement with CorVel to accept "85% of any applicable maximum allowable rate as specified by the state." We agree.

This court has recently held that a PPO agreement, such as the one between LCMH and CorVel, does not relieve an employer that has a separate agreement with a disability management and cost containment service of its obligation to reimburse health care providers in accordance with the Reimbursement Schedule in La.R.S. 23:1034.2. *See Cent. La. Ambulatory Surgical Ctr., Inc. v. Payless Shoesource, Inc.*, 10-86, 10-91, 10-92, 10-96, 10-97, 10-99, 10-100, 10-115, 10-117, 10-118 (La.App. 3 Cir. 7/28/10), ___ So.3d ___; *Agilus Health v. Accor Lodging N. A.*, 09-1049 (La.App. 3 Cir. 3/10/10), 32 So.3d 1120, *writ granted*, 10-800 (La. 6/18/10), 38 So.3d 312. In *Payless*, ___ So.3d at ___, this court determined that a PPO contract which "purports to reduce or relieve the employer's liability for workers' compensation medical payments from the full amount of the Fee Schedule . . . flies in the face of the language and purpose of the Act" because such reductions fail to consider the interrelationship of the pertinent sections of the workers' compensation statute and the overall social legislative purpose of the act.

The interrelationship of La.R.S. 23:1033 and La.R.S. 23:1203 was considered important in *Payless* and *Agilus*. Louisiana Revised Statutes 23:1033 provides that: "No contract, rule, regulation or device whatsoever shall operate to relieve the employer, in whole or in part, from any liability created by this Chapter except as

herein provided." Thereafter, Section 1203(B) outlines the workers' compensation employer's obligation to pay medical expenses; it states in pertinent part:

> The obligation of the employer to furnish such care, services, treatment, drugs, and supplies, whether in state or out of state, is limited to the reimbursement determined to be the mean of the usual and customary charges for such care, services, treatment, drugs, and supplies, as determined under the reimbursement schedule annually published pursuant to R.S. 23:1034.2 or the actual charge made for the service, whichever is less.

In *Payless*, ___ So.3d at ___, a panel of this court found that Sections 1033 and 1203(B) and the Louisiana Workers' Compensation Act (LWCA) "as a whole, prohibit any contracts that would operate to relieve an employer of liability created by the LWCA." *Agilus* also determined that La.R.S. 23:1033 prohibits a PPO contract from reducing an employer's liability under the Louisiana Workers' Compensation Act below what is provided in the Reimbursement Schedule.

Hobby Lobby urges that it is illogical to conclude that a health care provider can reduce an employer's reimbursement by charging the employer less than the reimbursement schedule provides pursuant to La.R.S. 23:1203(B) but cannot achieve the same end by agreeing to accept less by entering a PPO contract which does so. *Payless* addresses this argument, finding that health care providers can agree to accept "pre-negotiated" reduced rates; however, the reduced rates must be negotiated by the health care provider and the employer, not by the health care provider and a third party. We agree with this conclusion and find it dispositive of Hobby Lobby's argument in the present case.

For these reasons, we reverse the WCJ's denial of LCMH's claims that it was underpaid by Hobby Lobby for the services it rendered to Hobby Lobby's employees

4

and order that Hobby Lobby pay the amounts provided in the Reimbursement Schedule, as LCMH billed.[1]

***Penalties and Attorney Fees***

### *Underpayment of LCMH's Claims*

LCMH urges that Hobby Lobby's underpayment of its claims was arbitrary and capricious, entitling it to penalties and attorney fees as provided in La.R.S. 23:1201(F)(4) and for failing to provide either a benefit card or other written notice of Hobby Lobby's intent to access the PPO network discounts. Hobby Lobby counters that it reasonably controverted LCMH's claims for underpayment, asserting that its belief that a health care provider can contract to accept payments for services rendered below payments set forth in the Reimbursement Schedule was reasonable and that PPO contracts are not subject to the notice provisions of La.R.S. 40:2203.1(B). As support for Hobby Lobby's position, it cites holdings by other tribunals in this state that through the execution of PPO agreements, health care providers agreed to accept payments for their services that are less than the amounts set forth in the Reimbursement Schedule, as support for its position. *See Liberty Mut. Ins. Co. v. Dr. Clark Gunderson*, 2006 WL 367700 (WD La. February 15, 2006); *Lake Charles Mem'l Hosp.,* Docket Number 05-1318, Office of Workers' Compensation District 3; *St. Tammany Parish Hosp. v. Chick-fil-A*, Docket Numbers 08-4486, 08-5060, Officer of Workers' Compensation, District 6. Hobby Lobby also

---

[1]LCMH assigned as error the WCJ's dismissal of its claims, asserting that the claims were dismissed on the basis that the Office of Workers' Compensation does not have subject matter jurisdiction to consider the claims. In our view, the WCJ determined that the Office of Workers' Compensation does not have jurisdiction to determine whether Hobby Lobby paid LCMH in accordance with the terms of the PPO agreement. Regardless of the WCJ's basis for dismissing LCMH's claims, our reversal of the WCJ's dismissal of LCMH's claims and award of judgment in favor of LCMH against Hobby Lobby for the amount of its claims renders this assignment of error moot; therefore, it will not be addressed.

contends that this case presents novel issues of law for which there is no consensus among the courts of this state; therefore, it argues that its reliance on Hobby Lobby's PPO agreement does not warrant the imposition of penalties and attorney fees. With regard to its second defense, Hobby Lobby urges that pursuant to the clear language of La.R.S. 40:2203.1(A), the notice requirements therein do not apply to LCMH's claims.

The panel in *Agilus*, 32 So.3d 1120, determined that reliance on a PPO agreement did not present a close factual question and that an employer's reliance on a PPO agreement to reduce its reimbursement of the health care provider's charges did not reasonably controvert the health care provider's claim for payment. Accordingly, penalties and attorney fees were awarded. *Id.* The panel in *Payless*, ___ So.3d ___, originally concluded that while the PPO agreements were invalid, the employer's reliance on them as the basis for underpaying the health care provider's claims was reasonable and found the WCJ's award of penalties and attorney fees were improper because the claims were reasonably controverted, as provided in LaR.S. 23:1202(F)(2).

On rehearing, however, the panel in *Payless* reversed itself on this issue and affirmed the WCJ's awards of $2000 in penalties and $1500 in attorney fees, finding: 1) that for reasons set forth in *Gunderson v. R.A. Richard & Associates, Inc.*, 09-1498 (La.App. 3 Cir. 6/30/10), ___ So.3d ___, the employer's failure to comply with the notice provisions of La.R.S. 40:2203.1[2] warranted the imposition of penalties and 2)

---

[2] Louisiana Revised Statutes 40:2203.1 provides in pertinent part that:

A. Except as otherwise provided in this Subsection, the requirements of this Section shall apply to all preferred provider organization agreements that are applicable to medical services rendered in this state and to group purchasers as defined in this Part. The provisions of this Section shall not apply to a group purchaser when providing health benefits through its own network or direct provider

"once a health care provider prevails on an underpayment claim, the award of attorney fees is discretionary and is not subject to the 'reasonably controverted' limitation." In *Gunderson,* ___ So.3d at ___, this court determined that alternative rates of payment provided in a PPO agreement are not binding unless a benefit card is issued and presented to the health care provider when treatment is sought or the health care provider is given thirty-day written notice of an entity's intent to access services under the agreement. In making this determination, the panel held that the phrase "all preferred provider organization agreements" in Section 2203.1 includes workers' compensation claims, finding the legislature's use of the word "all" includes every type of claim.

For these reasons, we reverse the WCJ's denial of penalties and award penalties to LCMH in the amount of $2000 each for Hobby Lobby's three underpayments of LCMH's charges.

*Payless,* ___ So.3d at ___, noted on rehearing the award of attorney fees is not restricted by the "reasonably controverted" standard of La.R.S. 23:1201(F)(2). We further observe that with regard to the award of attorney fees, the language of La.R.S.

---

agreements or to such agreements of a group purchaser.

B. A preferred provider organization's alternative rates of payment shall not be enforceable or binding upon any provider unless such organization is clearly identified on the benefit card issued by the group purchaser or other entity accessing a group purchaser's contractual agreement or agreements and presented to the participating provider when medical care is provided. . . .

. . . .

(5) When no benefit card is issued or utilized by a group purchaser or other entity, written notification shall be required of any entity accessing an existing group purchaser's contractual agreement or agreements at least thirty days prior to accessing services through a participating provider under such agreement or agreements.

7

23:1201(F)(2) differs from that utilized in La.R.S. 23:1201(F)(4)—whereas the former states "together with reasonable attorney fees" the latter provides for "reasonable attorney fees based upon actual hours worked." Accordingly, we must determine whether this difference in language means that the award of attorney fees is to be assessed differently. For reasons that follow, we think not.

It has long been held that the fee an attorney receives may not exceed a "reasonable" fee. *See, e.g. Saucier v. Hayes Dairy Prods.*, 373 So.2d 102 (La.1978); *Hutner Levine Seeman & Stuart v. La. State Bar Ass'n*, 378 So.2d 423 (La.1979); *Pharis & Pharis v. Rayner*, 397 So.2d 1295 (La.1981), *on remand*, 406 So.2d 723 (La.App. Cir.1981). In *Rivet v. State*, 90-145 (La. 9/5/96), 680 So.2d 1154 (La.1996), an inverse condemnation suit, the court was faced with three statutes that seemingly applied to the question of attorney fees; in its simplest form the question was whether the formulation should be based on "attorney fees actually incurred," La.R.S. 13:5111(A), "reasonable attorney fees," La.R.S. 19:8, or an attorney fee which shall not "exceed twenty-five percent of the difference between the award and the amount deposited in the registry of the court," La.R.S. 48:453(E). In its resolution of the case, the Court stated:

> Regardless of the language of the statutory authorization for an award of attorney fees or the method employed by a trial court in making an award of attorney fees, courts may inquire as to the reasonableness of attorney fees as part of their prevailing, inherent authority to regulate the practice of law. This court has previously noted that factors to be taken into consideration in determining the reasonableness of attorney fees include: (1) the ultimate result obtained; (2) the responsibility incurred; (3) the importance of the litigation; (4) the amount of money involved; (5) the extent and character of the work performed; (6) the legal knowledge, attainment, and skill of the attorneys; (7) the number of appearances involved; (8) the intricacies of the facts involved; (9) the diligence and skill of counsel; and (10) the court's own knowledge. We have further noted that these factors are

8

derived from Rule 1.5(a) of the Rules of Professional Conduct, which provides:

> (a) A lawyer's fees shall be reasonable. The factors to be considered in determining the reasonableness of a fee include the following:
>
> > (1) The time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;
> >
> > (2) The likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;
> >
> > (3) The fee customarily charged in the locality for similar legal services;
> >
> > (4) The amount involved and the results obtained;
> >
> > (5) The time limitations imposed by the client or by the circumstances;
> >
> > (6) The nature and length of the professional relationship with the client;
> >
> > (7) The experience, reputation, and ability of the lawyer or lawyers performing the services; and
> >
> > (8) Whether the fee is fixed or contingent.

*Rivet*, 680 So.2d at 1161-62 (citations omitted) (footnote omitted).

We agree with *Rivet's* analysis and find that our duty in the assessment of a reasonable attorney fee, regardless of the statutory authorization, requires us to look beyond the actual hours worked. Certainly, it is important to consider that element, but it is only one of several factors relevant to the issue before us. To limit our inquiry to the actual hours worked would skew the well-established concept of reasonableness and upset a well-understood jurisprudential concept.

Counsel for Hobby Lobby submitted affidavits itemizing his services in each of the three consolidated matters as follows: Stephen Babin claim—9.5 hours; Janet

9

Hines claim—29.29 hours; and Dustin Hebert claim—16.5 hours. Counsel's hourly rate is $200 per hour, resulting in fees sought being $1900; $3300; and $5858, respectively. As noted by counsel in his briefs before this court and the WCJ, there are no disputed facts herein and only legal issues are presented for consideration. The same legal issues presented herein have been presented in other cases, some of which have been decided and some of which are pending. Our consideration of the factors outlined in *Rivet* in the context of the facts of these cases and in light of counsel having presented the same legal issue previously lead us to conclude that $1900 in the Babin case and $2000 in the Hines and Hebert cases are fair awards for attorney fees for counsel's work performed in these consolidated cases before the WCJ and award an additional $1500 for work performed on each appeal.

### Late Payment of LCMH's Claims

Hobby Lobby answered LCMH's appeal, asserting that the WCJ's award of penalties of $2000.00 and attorney fees of $1000.00 for its failure to pay LCMH's claims within sixty days as provided in La.R.S. 23:1201(E) constitutes error and should be reversed. Citing *Roque v. Shell Beach Trucking*, 02-1305 (La.App. 3 Cir. 5/7/03), 844 So.2d 1111, as support for its argument, it contends that only a workers' compensation claimant has the right to claim penalties and attorney fees for late payment of a medical claim. We disagree.

Contrary to Hobby Lobby's claims, the Workers' Compensation Act specifically addresses this issue. Louisiana Revised Statutes 23:1201(F)(4) provides: "[i]n the event that the health care provider prevails on a claim for payment of his fee, penalties as provided in this Section and reasonable attorney fees based upon actual hours worked may be awarded and paid directly to the health care provider."

10

Furthermore, we find *Roque* factually distinguishable because that case awarded penalties and attorney fees only because the employee, not the health care provider, filed a claim for payment of the health care provider's fee. Therefore, we find no merit to the argument Hobby Lobby advances in its answer to this appeal.

## DISPOSITION

For the reasons discussed, we reverse the WCJ's denial of LCMH's claims that Hobby Lobby underpaid it for the services it rendered to Hobby Lobby's employees and order that Hobby Lobby reimburse LCMH in accordance with the Reimbursement Schedule, as well as the WCJ's denial of LCMH's claims for penalties and attorney fees for Hobby Lobby's failure to reimburse it according to the Reimbursement Schedule. Further, we award $2000 in penalties with regard to each claim and award attorney fees in the amount of $1900 in the Babin case and $2000 in the Hines and Hebert cases for work performed before the WCJ; we award $1500 in attorney fees with regard to each claim for work performed on this appeal. We affirm the WCJ's award of penalties and attorney fees for Hobby Lobby's late reimbursement of LCMH's claims. All costs are assessed to Hobby Lobby.

**AFFIRMED IN PART; REVERSED IN PART; RENDERED.**

11