# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## WCA 15-284


**LAFAYETTE BONE & JOINT CLINIC (CHARLES POOLE, JR.), ET AL.**

**VERSUS**

**GUY HOPKINS CONSTRUCTION CO., INC., ET AL.**


**\*\*\*\*\*\*\*\*\*\***

APPEAL FROM THE
OFFICE OF WORKERS' COMPENSATION - # 4
PARISH OF LAFAYETTE, NO. 08-22391
SHARON MORROW, WORKERS' COMPENSATION JUDGE

**\*\*\*\*\*\*\*\*\*\***

**DAVID KENT SAVOIE**
**JUDGE**

**\*\*\*\*\*\*\*\*\*\***

Court composed of Elizabeth A. Pickett, Phyllis M. Keaty, and David Kent Savoie, Judges.


**AMENDED IN PART,**
**REVERSED IN PART, AND RENDERED.**

**Jeffrey C. Napolitano**
**Juge, Napolitano, Guilbeau, Ruli & Freiman**
**3320 W. Esplanade Ave. North**
**Metairie, LA 70002**
**(504) 831-7270**
**COUNSEL FOR DEFENDANTS-APPELLEES:**
     **LUBA Casualty Insurance Company**
     **Guy Hopkins Construction Co., Inc.**

**Thomas A. Filo**
**Cox, Cox, Filo, Camel & Wilson, L.L.C.**
**723 Broad Street**
**Lake Charles, LA 70601**
**(337) 436-6611**
**COUNSEL FOR PLAINTIFFS-APPELLANTS:**
     **Dr. John E. Cobb, MD, APMC**
     **Lafayette Bone & Joint Clinic**

**Lawrence C. Billeaud**
**Attorney at Law**
**706 West University Avenue**
**Lafayette, LA 70506**
**(337) 266-2055**
**COUNSEL FOR PLAINTIFFS-APPELLANTS:**
     **Dr. John E. Cobb, MD, APMC**
     **Lafayette Bone & Joint Clinic**

**SAVOIE, Judge.**

This is one of two workers' compensation matters now before us involving an identical dispute between a health care provider and an employer/workers' compensation insurer over reimbursement for physician-dispensed medication provided in connection with the employee's authorized office visits with his treating physician. The two matters were tried together, but never consolidated, and they were appealed separately.[1]

After trial, the workers' compensation judge (WCJ) limited the health care provider's reimbursement for the medication to $750.00 under La.R.S. 23:1142, after finding that the medication was not authorized. The WCJ also denied the health care provider's claim for penalties and attorney fees.

For the following reasons, we amend the judgment to award reimbursement for the medication in the full amount charged, reverse the judgment in part, and award the health care provider penalties and attorney fees.

## FACTUAL AND PROCEDURAL BACKGROUND

The facts in this case are largely undisputed. On April 10, 2003, Charles Poole was injured in the course and scope of his employment with Guy Hopkins Construction, Inc. (Guy Hopkins). According to the WCJ's ruling, LUBA Casualty Insurance Company (LUBA)[2] was Guy Hopkins' workers' compensation self-insured fund, and later insurer. Mr. Poole was treated by Dr. John Cobb with Lafayette Bone and Joint Clinic for work-related injuries.

On June 5, 2008, LUBA sent Dr. Cobb a letter indicating generally that it would no longer provide reimbursement for medications that Dr. Cobb dispensed

---

[1] The other matter on appeal bears docket number 15-283.

[2] According to LUBA's Answer, the original Disputed Claim for Compensation Form incorrectly referred to LUBA as "Louisiana United Business SIF."

to workers' compensation claimants. The letter asked Dr. Cobb to direct patients to a retail pharmacy to fill their prescriptions. LUBA submits that it made a business decision to no longer reimburse for physician-dispensed medication because it is significantly more expensive under the workers' compensation fee schedule than the same medication obtained from a retail pharmacy.

LUBA also submits that it contracted with a Pharmacy Benefits Manager (PBM), and that the PBM sent a prescription card to all LUBA workers' compensation claimants with a letter encouraging, *but not requiring*, them to use the card for drugs prescribed by an authorized workers' compensation physician. LUBA further admits that it did not notify Mr. Poole that it would no longer pay for physician-dispensed medication.

Simone Clark testified on behalf of Lafayette Bone and Joint Clinic and indicated that prior to June 5, 2008, LUBA had paid over $750.00 for treatment rendered to Mr. Poole.  According to Sandy Guidry, a billing supervisor for medication dispensed at Lafayette Bone and Joint Clinic, prescription medication for injured workers was distributed at the time the injured worker came in for an office visit.

On the following dates, Dr. Cobb and/or Lafayette Bone and Joint Clinic dispensed medication to Mr. Poole in connection with his office visits with Dr. Cobb: July 10, 2008; August 13, 2008; September 22, 2008; October 29, 2008; and December 23, 2008. The billed charges for this medication totaled $1,359.65. The parties stipulated that the billed charges were at or below the rate set forth by the workers' compensation fee schedule.

LUBA authorized and paid for Mr. Poole's office visits with Dr. Cobb after June 5, 2008. However, LUBA denied the health care provider's claims for

reimbursement for Mr. Poole's medication, referring to the June 5, 2008 letter. According to LUBA, Mr. Poole was authorized to take the medication that had been prescribed by Dr. Cobb, and the medication was reasonable and necessary, but Dr. Cobb and/or Lafayette Bone and Joint Clinic were not authorized to dispense the medication.

On November 3, 2008, Lafayette Bone and Joint Clinic submitted a Disputed Claim for Compensation against Guy Hopkins and LUBA seeking reimbursement for the medication dispensed to Mr. Poole in 2008, as well as penalties and attorney fees for arbitrary and capricious handling of the claim.

On February 18, 2014, the WCJ granted Lafayette Bone and Joint Clinic's unopposed motion for leave to file an amended disputed claim form reflecting the health care provider as "John E. Cobb, MD, APMC."

Trial of the matter was held on February 24, 2014. On November 25, 2014, the WCJ rendered judgment in favor of Lafayette Bone and Joint Clinic and against Guy Hopkins, but limited reimbursement for the medication to $750.00 under La.R.S. 23:1142, after finding that the medication was unauthorized.

In her written reasons for ruling, the WCJ indicated her reliance on *Bordelon v. Lafayette Consolidated Government,* 14-304 (La.App. 3 Cir. 10/1/14), 149 So.3d 421, *writ denied,* 14-2296 (La. 2/6/15), 158 So.3d 816; *Rebel Distributors Corp., Inc. v. LUBA Workers' Comp.,* 12-909 (La.App. 3 Cir. 4/2/14), 137 So.3d 91; and *Sigler v. Rand,* 04-1138 (La.App. 3 Cir. 12/29/04), 896 So.2d 189, *writ denied,* 05-278 (La. 4/1/05), 897 So.2d 611.

John E. Cobb, MD, APMC appealed.

3

## ASSIGNMENTS OF ERROR

On appeal, the health care provider asserts the following assignments of error:

1. The trial court committed manifest error insofar as it failed to order defendant to pay for all prescription medications which LUBA admits were compensable, reasonable, necessary, and were pre-authorized as part of the treatment of the injured worker, and which were billed at rates set by the fee schedule promulgated pursuant to the workers['] compensation act.

2. The trial court committed manifest error insofar as it failed [to] award penalties and attorney fees for complete non-payment of any amount of the prescription medications before the trial of the above[-]captioned matter.

## DISCUSSION

**Standard of Review:**

The Louisiana Supreme Court has set forth the following standard for reviewing a trial court's findings of fact:

> A court of appeal may not set aside a trial court's or a jury's finding of fact in the absence of "manifest error" or unless it is "clearly wrong." [There is] a two-part test for the reversal of a factfinder's determinations:
>
> > 1) The appellate court must find from the record that a reasonable factual basis does not exist for the finding of the trial court, and
> >
> > 2) [T]the appellate court must further determine that the record establishes that the finding is clearly wrong (manifestly erroneous).
>
> This test dictates that a reviewing court must do more than simply review the record for some evidence which supports or controverts the trial court's finding. The reviewing court must review the record in its entirety to determine whether the trial court's finding was clearly wrong or manifestly erroneous.
>
> Nevertheless, the issue to be resolved by a reviewing court is not whether the trier of fact was right or wrong, but whether the factfinder's conclusion was a reasonable one. Even though an appellate court may feel its own evaluations and inferences are more

4

reasonable than the factfinder's, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review where conflict exists in the testimony. However, where documents or objective evidence so contradict the witness's story, or the story itself is so internally inconsistent or implausible on its face, that a reasonable factfinder would not credit the witness's story, the court of appeal may find manifest error or clear wrongness even in a finding purportedly based upon a credibility determination.

*Stobart v. State, through Dep't. of Transp. and Dev.*, 617 So.2d 880, 882 (La.1993) (citations omitted).

**Assignment of Error No. 1**:

On appeal, the Appellant health care provider argues that the physician-dispensed medication was part of the treatment authorized by LUBA and therefore the health care provider is entitled to reimbursement of the full amount of the billed charges. Appellant further argues that the WCJ's reliance on *Rebel,* 137 So.3d 91, *Bordelon,* 149 So.3d 421, and *Sigler,* 896 So.2d 189 was misplaced because those cases are distinguishable.

Appellees assert that the WCJ properly limited reimbursement to $750.00 pursuant to La.R.S. 23:1142 because the health care provider failed to seek LUBA's approval before providing the prescription medication. While Appellees indicate that the medication prescribed to Mr. Poole was authorized, they submit that the health care provider was not authorized to dispense it.

Louisiana Revised Statutes 23:1203(A) obligates an employer to furnish all necessary medical and non-medical services and drugs. The employer's obligation is limited to the reimbursement as determined under the reimbursement schedule annually published pursuant to La.R.S. 23:1034.2, or the actual charge for the service, whichever is less. La.R.S. 23:1203(B).

Although La.R.S. 23:1203 obligates an employer to furnish all necessary drugs and medical treatment, La.R.S. 23:1142 places some limitations on reimbursement due for certain medical procedures. Louisiana Revised Statutes 23:1142(B) addresses nonemergency care and, at the time of Mr. Poole's injury, provided in pertinent part as follows:

(1) Except as provided herein, each health care provider may not incur more than a total of seven hundred fifty dollars in nonemergency diagnostic testing or treatment without the mutual consent of the payor and the employee as provided by regulation. Except as provided herein, that portion of the fees for nonemergency services of each health care provider in excess of seven hundred fifty dollars shall not be an enforceable obligation against the employee or the employer or the employer's workers' compensation insurer unless the employee and the payor have agreed upon the diagnostic testing or treatment by the health care provider.

As recognized in *Tyler v. Rockwood Insurance Co.,* 96-326 (La.App. 1 Cir. 2/14/97), 690 So.2d 834, 838, *writ denied,* 97-673 (La. 4/25/97), 692 So.2d 1093:

Generally, an employee must receive prior approval from his employer before he seeks nonemergency medical attention for a work-related accident or injury. L[a].R.S. 23:1142(B); *INA v. Hayes,* [93-1648 (La.App. 3 Cir. 8/31/94),] 643 So.2d [190, *writ denied*, 94-2471 (La. 12/9/94), 647 So.2d 1113]. This statute allows a health care provider to incur up to $750 in nonemergency diagnostic testing and treatment without the mutual consent of the payor, who is the entity responsible, whether by law or contract, for the payment of the medical expenses incurred by a claimant as a result of a work-related injury. *See* L[a.]R.S. 23:1142(A). However, where there has been no approval, the claimant's right to reimbursement is limited to $750, but such recovery is contingent on proof by the claimant that the treatment cost at least $750 and was medically necessary.

In the instant matter, it is undisputed that as of June 5, 2008, LUBA had already paid over $750.00 to Dr. Cobb for the treatment of Mr. Poole. It is also undisputed that LUBA had authorized and paid for additional office visits with Dr. Cobb after June 5, 2008, and that Mr. Poole obtained the subject medication on various dates after June 5, 2008, in connection with the authorized office visits

6

with Dr. Cobb. Further, Paul Roy, on behalf of LUBA, testified that separate authorization for medication prescribed by an authorized treating physician is typically not required, that the medication itself was authorized, and that the medication was reasonable and necessary for the treatment of Mr. Poole. Moreover, it is undisputed that LUBA did not notify Mr. Poole that he could not obtain his medication from his treating physician.

Under these facts, it was manifestly erroneous for the WCJ to conclude that the medication dispensed in connection with authorized office visits was not also authorized. In *Rebel,* 137 So.3d 91, a panel of this Court held that under La.R.S. 23:1142(B)(1), "nonemergency diagnostic testing or treatment" *includes* prescription medication. *Rebel* does not suggest that separate authorization for medication dispensed in connection with authorized office visits over $750.00 is required.

In addition, the June 5, 2008 letter from LUBA cannot apply to *authorized* treatment rendered *after* the date of letter. Therefore, the letter is inapplicable to the analysis. Moreover, while *Sigler,* 896 So.2d 189, and *Bordelon,* 149 So.3d 421, allow a payor to direct an *injured worker* as to where to obtain medication, neither LUBA nor Guy Hopkins notified Mr. Poole that he was not permitted to obtain his medications directly from his treating physician. In *Rebel,* 137 So.3d 91, we recognized that a workers' compensation payor's choice of pharmacy is an issue between the payor and employee and cannot be raised in a dispute between a payor and the health care provider. Therefore, *Sigler* and *Bordelon* are inapplicable.

We therefore amend the judgment to award reimbursement for the full amount of the charges the health care provider billed for the medication, which the parties stipulated was at or below the workers' compensation fee schedule rate.

7

We further amend the judgment to be in favor of both Lafayette Bone and Joint Clinic *and* Dr. John E. Cobb, MD, APMC, so that it is consistent with the procedural history of this case.

## Assignment of Error No. 2:

In its second assignment of error, the health care provider argues that the WCJ was manifestly erroneous in failing to award penalties and attorney fees in accordance with La.R.S. 23:1201(F)(4) because no payment whatsoever was made until after trial when LUBA tendered $750.00. The health care provider also seeks additional attorney fees incurred in connection with this appeal. Appellees do not specifically address this assignment of error of their brief.

At the time of Mr. Poole's injury, Louisiana Revised Statutes 23:1201 provided in pertinent part as follows (emphasis added):

> F. Failure to provide payment in accordance with this Section shall result in the assessment of a penalty in an amount equal to twelve percent of any unpaid compensation or medical benefits or fifty dollars per calendar day, whichever is greater, for each day in which any and all compensation or medical benefits remain unpaid, together with reasonable attorney fees for each disputed claim; however, the fifty dollars per calendar day penalty **shall not exceed a maximum of two thousand dollars in the aggregate for any claim**. Penalties shall be assessed in the following manner:
>
> (1) Such penalty and attorney fees shall be assessed against either the employer or the insurer, depending upon fault. No workers' compensation insurance policy shall provide that these sums shall be paid by the insurer if the workers' compensation judge determines that the penalty and attorney fees are to be paid by the employer rather than the insurer.
>
> (2) **This Subsection shall not apply if the claim is reasonably controverted** or if such nonpayment results from conditions over which the employer or insurer had no control.
>
> . . . .
>
> (4) **In the event that the health care provider prevails on a claim for payment of his fee, penalties as provided in this Section and**

**reasonable attorney fees based upon actual hours worked may be awarded and paid directly to the health care provider**. This Subsection shall not be construed to provide for recovery of more than one penalty or attorney fee.

Louisiana Revised Statutes R.S. 23:1201(F)(4) affords a health care provider who prevails on a claim for a payment of his fee with "penalties as provided in this Section," which necessarily encompasses the "reasonably controverted standard" of La.R.S. 23:1201(F)(2). A workers' compensation claim has been "reasonably controverted" if the employer/insurer "possessed factual and/or medical information to reasonably counter the factual and medical information presented by the claimant[.]" *Brown v. Texas-LA Cartage, Inc.,* 98-1063, p. 9 (La. 12/1/98), 721 So.2d 885, 890. The payor "must have some valid reason or evidence upon which to base [its] denial of benefits." *Id.*

The decision to cast an employer with penalties and attorney fees is a question of fact subject to the manifest error of review. *Brown v. Lafayette Ass'n of Retarded Citizens, Inc.*, 11-1595 (La.App. 3 Cir. 6/20/12), 94 So.3d 950. Based on the undisputed facts in this case, we find that it was manifestly erroneous for the WCJ to conclude that there was a valid reason or evidence upon which LUBA could rely in denying reimbursement for the medication at issue.

The record is clear that the medication was dispensed in connection with authorized treatment over $750.00, and there was no valid basis upon which LUBA could conclude that separate authorization for the medication was required. Even Mr. Roy, on behalf of LUBA, testified that separate authorization for medication prescribed by an authorized treating physician is typically not required, and LUBA admitted that the medication was reasonable and necessary for Mr.

Poole's treatment. Therefore, LUBA was obligated under La.R.S. 23:1203 to pay for the medication at the rate set forth by the fee schedule.

It was also erroneous for the WCJ to conclude that LUBA was justified in its reliance on the June 5, 2008 letter in denying reimbursement. While *Sigler,* 896 So.2d 189, was in effect at the time LUBA denied the health care provider's claim, LUBA did not exercise its right to direct Mr. Poole as to where he could or could not obtain his medication. Therefore, we reverse the ruling of WCJ denying the health care provider's claim for penalties and award $2,000.00 in accordance with La.R.S. 23:1201(F)(4).

In addition to penalties, La.R.S. 23:1201(F)(4) contemplates an award of reasonable attorney fees based on actual hours worked to a health care provider who prevails on a claim for payment. We have recognized that an award of attorney fees under La.R.S. 23:1201(F)(4) is not restricted by the "reasonably controverted" standard of La.R.S. 23:1201(F)(2). *Lake Charles Mem'l Hosp. (Babin), v. Hobby Lobby Stores,* 10-261 (La.App. 3 Cir. 11/24/10), 108 So.3d 95. Therefore, it was error for the WCJ to deny the health care provider's claim for attorney fees.

At trial, the health care provider submitted evidence that it had incurred a total of $3,000.00 in attorney fees for twelve hours billed by its attorney at a rate of $250.00 per hour. We find these charges are reasonable, and therefore award $3,000.00 in attorney fees incurred up to the time of trial in this matter. We further award an additional $750.00 in attorney fees necessitated by the appeal.

## CONCLUSION

For the foregoing reasons, the judgment of the trial court is amended in part to award Lafayette Bone and Joint Clinic and Dr. John E. Cobb, MD, APMC

10

$1,359.65 for medications dispensed in 2008 for employee Charles Poole, subject to a credit for any sums paid.

We further reverse the trial court's denial of the health care provider's claim for penalties and attorney fees and render judgment in favor of Lafayette Bone and Joint Clinic and Dr. John E. Cobb, MD, APMC, and against LUBA, for $2,000.00 in penalties and $3,750.00 in attorney fees. Costs of this appeal are assessed to Appellees Guy Hopkins Construction Co. Inc. and LUBA.

**AMENDED IN PART, REVERSED IN PART, AND RENDERED.**